OPINION OF THE COURT
Eileen Bransten, J.
Pursuant to CPLR 3211 (a) (2) and (7), defendants New York State Department of Taxation and Finance, Robert Megna, in his official capacity as Commissioner of the New York State Department of Taxation and Finance, the State of New York, and David A. Paterson, in his official capacity as the Governor of the State of New York (collectively the State) move to dismiss the complaint. Plaintiffs Amazon.com LLC and Amazon Services, LLC (collectively Amazon) oppose dismissal and cross-move for summary judgment.
Background
Since 1995, Amazon has been operating a retail Internet business (Mastro aff, exhibit 1, H 4). Its goods are sold on line and shipped to buyers worldwide, including to New York (id. 1Í 20). Amazon does not own property in New York or maintain any New York offices.[1] None of its employees work or reside in New York (Mastro aff, exhibit 1, U 20).
Amazon’s Associates Program
Amazon created an “Associates Program,” which allows participants (associates) to maintain links to Amazon.com on their own Web sites and compensates them by paying “a percentage of the proceeds of the sale” (Mastro aff, exhibit 1,1f 23). Amazon also offers incentives to associates that “directly refer” customers to its Amazon Prime program through Web site links, paying them a “$12 bounty” for each new enrollee (id., exhibit 24, H 5).
Prospective associates must apply to join the program (Mastro aff, exhibit 1, 1Í 21; exhibit 24). Assuming that Amazon accepts the application, the parties enter into an operating agreement, which makes clear that the “Relationship of [the] *421 Parties” is that of “independent contractors” (id., exhibit 24, No. 14). Associates are granted “a revocable, non-exclusive, worldwide, royalty-free license . . . solely for purposes of facilitating referrals from [their sites] to the Amazon Site” (id., exhibit 24, No. 2).
Amazon authorizes associates to place different types of links from their Web sites to its own. For example, associates can set up a “product link,” generally allowing them to “select one or more Products [on Amazon’s site] to list on [their own] site,” a “search box link,” which permits visitors to the associate’s site to view Amazon merchandise related to their queries, or a “cart link,” which “when clicked will allow visitors [of the associate’s site] to add products to their shopping cart and/or purchase products via [Amazon’s] 1-Click feature” (id.).
As a condition of participation, associates acknowledge that Amazon “may receive information from or about visitors to [their sites]” and that Amazon “may from time to time send [them] email updates about the Program” (id.).
The operating agreement further sets forth that associates will be paid through a “referral fee” and can elect between the “Classic Fee Structure” (generally 4% of qualifying revenues from sales of products sold through special links) or the “Performance Fee Structure” (a percentage of qualifying revenues set forth in a table that varies with the number of total items shipped) (Mastro aff, exhibit 24, No. 5).
Amazon has hundreds of thousands of associates. Thousands “of them have provided Amazon with addresses in New York” (Mastro aff, exhibit 1, 1Í 25). Sales to New York customers originating from New York-based associate referrals constitute less than 1.5% of Amazon’s New York sales (Comfort aff If 6). Without disclosing the dollar amount of those sales, Amazon simply acknowledges that its “Associates Program generates more than $10,000 per year in sales to customers located in New York” (id. 1i 13).
2008 Amendment of New York’s Tax Law
In New York, “every vendor of tangible personal property” is required to collect sales tax (see Tax Law § 1131 [1]; § 1105). Included in the definition of “vendor” is:
“A person who solicits business . . . :
“(I) by employees, independent contractors, agents or other representatives . . .
*422 “and by reason thereof makes sales to persons within the state of tangible personal property or services, the use of which is taxed by this article” (Tax Law § 1101 [b] [8] [i] [C]).
On April 23, 2008, Governor Paterson signed into law Tax Law § 1101 (b) (8) (vi) (commission-agreement provision), which provides that for purposes of the above-quoted section of the Tax Law:
“a person making sales of tangible personal property or services taxable under this article (‘seller’) shall be presumed to be soliciting business through an independent contractor or other representative if the seller enters into an agreement with a resident of this state under which the resident, for a commission or other consideration, directly or indirectly refers potential customers, whether by a link on an internet website or otherwise, to the seller, if the cumulative gross receipts from sales by the seller to customers in the state who are referred to the seller by all residents with this type of an agreement with the seller is in excess of ten thousand dollars during the preceding four quarterly periods . . . This presumption may be rebutted by proof that the resident with whom the seller has an agreement did not engage in any solicitation in the state on behalf of the seller that would satisfy the nexus requirement of the United States constitution during the four quarterly periods in question.”
The commission-agreement provision thus requires collection of New York taxes from New Yorkers by out-of-state sellers that contractually agree to pay commissions to New York residents for referring potential customers to them, provided that more than $10,000 was generated from such New York referrals during the preceding four quarterly periods.
An out-of-state seller that could establish its commissioned New York residents did not engage in any solicitation that would satisfy the United States Constitution’s “nexus requirement” would be exempt from tax collection (see State’s mem of law-[State mem] at 7). The State has clarified that an out-of-state seller that includes in its agreement a condition that in-state commissioned representatives are prohibited from engaging in solicitation activities in New York on its behalf and ensures compliance through a certification, may rebut the presumption that the seller is a vendor so long as the State does not subsequently determine that in-state solicitation actually took *423 place (see State mem, exhibit 3 [June 30, 2008 Tax Bureau Services mem]).
Once the commission-agreement provision was enacted, Amazon began collecting taxes from its New York customers under protest (Comfort aff 1Í1Í14-15).
This Action
On April 25, 2008, Amazon commenced this action, alleging that the commission-agreement provision “violates the Commerce Clause of the United States Constitution, both facially and as applied to Amazon, because it imposes tax collection obligations on out-of-state entities who have no substantial nexus with New York” (verified complaint 11 3 [b]). Amazon also contends that the provision violates the Federal and State Constitutions’ Due Process Clauses, both facially and as applied, because “it effectively creates an irrebuttable presumption of ‘solicitation’ and is overly broad and vague” (id.). Amazon further maintains that the enactment violates the Constitutions’ Equal Protection Clauses because “it intentionally targets Amazon” (id. 11 3 [c]).
Analysis
Amazon’s complaint must be dismissed in its entirety for failure to state a cause of action (CPLR 3211 [a] [7]). Even accepting all the facts alleged to be true, there is no basis upon which Amazon can prevail.
Commerce Clause
A state may require an entity engaged in interstate commerce to collect taxes on its behalf provided the “tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State” (Complete Auto Transit, Inc. v Brady, 430 US 274, 279 [1977]).
To establish a “substantial nexus” with the taxing state, “physical presence of the vendor is required, [however] it need not be substantial. Rather, it must be demonstrably more than a ‘slightest presence.’ And it may be manifested by . . . economic activities in the taxing State performed by the vendor’s personnel or on its behalf’ (Matter of Orvis Co. v Tax Appeals Trib. of State of N.Y., 86 NY2d 165, 178 [1995] [citation omitted], cert denied sub nom. Vermont Info. Processing, Inc. v Commissioner, N.Y. State Dept. of Taxation & Fin., 516 US 989 [1995]). As Amazon acknowledges, physical presence “can be *424 actual or imputed based on the in-state solicitation of sales by an employee, agent, or independent contractor of the retailer on its behalf” (Amazon’s mem of law [Amazon mem] at 14).
In Scripto, Inc. v Carson (362 US 207, 209 [I960]), for example, the United States Supreme Court held that a state could require tax collection by an out-of-state company that had contracts with 10 in-state residents — deemed “independent contractors” — who solicited orders for products on its behalf. The agreement with the contractors provided that they were to be paid by commission and salespeople sent orders out of state for fulfillment (id.; see also Standard Pressed Steel Co. v Department of Revenue of Wash., 419 US 560, 561 [1975] [sufficient nexus based on single employee who resided in-state and consulted with customer therein]; Felt & Tarrant Mfg. Co. v Gallagher, 306 US 62, 64 [1939] [collection mandated based on presence of two general agents contractually granted the right to solicit in-state orders who were to be paid by commission]; Matter of Orvis Co., 86 NY2d at 178-179 [in-state activity sufficient based on employee visits to solicit business]).
In contrast, if the only connection with the state is solicitation from out of state — through catalogs, flyers, advertisements in national periodicals or telephone calls — and delivery of merchandise to customers by common carrier or use of mail, there is an insufficient nexus for taxation purposes (see Quill Corp. v North Dakota, 504 US 298 [1992]; National Bellas Hess, Inc. v Department of Revenue of Ill., 386 US 753 [1967]).
So long as there is a “substantial nexus” with the taxing state, the taxes that must be collected need not derive from the seller’s in-state activity (National Geographic Soc. v California Bd. of Equalization, 430 US 551, 560 [1977] [nonprofit society required to collect taxes from California mail-order customers based on maintenance of two offices in California from which advertising was solicited for its monthly magazine]).
Facial Challenge
“A party mounting a facial constitutional challenge bears the substantial burden of demonstrating ‘that “in any degree and in every conceivable application,” the law suffers wholesale constitutional impairment’ ” (Matter of Moran Towing Corp. v Urbach, 99 NY2d 443, 448 [2003] [citation omitted]). The statute’s “challenger must establish that no set of circumstances exists under which the Act would be valid” (id. [citation omitted]).
*425 Amazon argues that the statute is facially invalid because “it imposes tax collection obligations based on activities that are insufficient to create a substantial nexus under the dormant Commerce Clause” (Amazon mem at 15). Amazon is wrong.
The commission-agreement provision is carefully crafted to ensure that there is a sufficient basis for requiring collection of New York taxes and, if such a basis does not exist, it gives the seller an out. The statute first requires that a seller enter into a contract with a New York resident before any obligation will be imposed. Next, before tax collection is required, it mandates that the New York resident refer potential customers to the seller. The measure further necessitates an arrangement whereby the seller pays the New York resident a commission or provides other consideration for the referred. Finally, New York’s Tax Law requires that the seller receive in excess of $10,000 from New York customers referred to it through its business arrangement.
All of these requirements make clear that a tax-collection obligation will only be imposed based on an out-of-state seller’s conscious decision to contract with in-state residents who collectively refer more than $10,000 of New York-based business. The statute is targeted at requiring tax collection when an out-of-state seller avails itself of the benefit of in-state contractors compensated for referrals. As an added safeguard the commission-agreement provision makes plain that a seller does not have to collect taxes so long as its New York actors “did not engage in any solicitation in the state [on its behalf] that would satisfy the nexus requirement of the United States constitution.” (Tax Law § 1101 [b] [8] [vi].) Thus, a seller is afforded the opportunity to prove that none of its contractors actively sought sales on its behalf in New York.
There is nothing infirm about the commission-agreement provision, which contemplates a substantial nexus with New York. Significantly, New York residents, with whom out-of-state sellers entered into agreements, must refer more than $10,000 of business — and New York business no less — before there is any collection obligation. The statute thus requires “demonstrably more than a ‘slightest presence’ ” and obligates collection of taxes based on economic activities in New York “performed by the vendor’s personnel or on its behalf’ (Matter of Orvis Co., 86 NY2d at 178 [citation omitted]).
Amazon urges that the statute would bring within its ambit “simple advertising by in-state advertisers” (Amazon mem at *426 16). The commission-agreement provision, however, does no such thing. It imposes a tax-collection obligation on sellers who contractually agree to compensate New York residents for business that they generate and not simply for publicity. Amazon has not come close to refuting the Tax Law’s presumed constitutionality and the statute must be upheld.
As-Applied Challenge
Amazon maintains that it lacks a substantial nexus with New York and that its associates’ activities are insufficient to justify imposition of New York tax-collection obligations (Amazon mem at 15). It argues that it has no physical presence in New York and that its associates have no role in its sales transactions, which are completed out of state (Amazon mem at 19). Amazon emphasizes that its associates “are mere advertisers who do not solicit sales at Amazon’s behest” and that they are not “traveling salesmen” — they do not necessarily personally solicit sales from New York residents {id. at 20, 21, 24-25; Amazon reply mem at 5). It asserts that all its operating agreements provide for is placement of links on associates’ Web sites (Amazon mem at 21, 25).
Amazon further states that associates’ referrals to New York customers are not significantly associated with its ability to establish and maintain a market for sales in New York because they account for less than 1.5% of its New York sales (Amazon mem at 27). Amazon complains that “it is practically impossible” for it to determine with certainty which of its associates are New York residents and then to disprove solicitation (Mastro aff, exhibit 1, If 44).
None of these allegations, however, sufficiently state a claim for violation of the Commerce Clause.
Amazon contracts with thousands of associates that provided it with a New York address. Certainly, if Amazon were to have a dispute with any of them, it could easily ascertain New York residency for purposes of a lawsuit. All of the information is publicly available. Indeed, there is no reason that the associates application, which Amazon may accept or reject, cannot inquire about New York resident status.
It does not matter, moreover, that associates do not solicit New York business at Amazon’s direct behest or that Amazon contractually prohibits them from engaging in certain limited specified conduct such as offering its customers money back for *427 Amazon purchases made through associate links.[2] Amazon chooses to benefit from New York associates that are free to target New Yorkers and encourage Amazon sales, all the while earning money for Amazon in return for which Amazon pays them commissions. Amazon does not discourage its associates from reaching out to customers or contributors and pressing Amazon sales.
Amazon has not contested that it contracts with thousands of New Yorkers and that as a result of New York referrals to New York residents it obtains the benefit of more than $10,000 annually. Amazon should not be permitted to escape tax collection indirectly, through use of an incentivized New York sales force to generate revenue, when it would not be able to achieve tax avoidance directly through use of New York employees engaged in the very same activities.
In its complaint, Amazon fails to allege that its New York associates do not solicit business for it from New York customers. None of Amazon’s claims, even if all true, would justify a conclusion that the commission-agreement provision cannot legally be applied to Amazon. Amazon’s first cause of action for declaratory relief based on violation of the Commerce Clause is therefore dismissed.
Due Process and Equal Protection Claims
Amazon maintains that the commission-agreement provision “violates due process by attempting to camouflage its blatant violation of the Commerce Clause as a statutory ‘presumption’ ” (Amazon mem at 30). It contends that there is no rational relationship between facts triggering the presumption — contracts with in-state residents who are paid by commission to make referrals and more than $10,000 of New York revenue from such arrangements — and the fact presumed — that motivated New York residents will solicit business for Amazon from other New York residents.
A legislative presumption will withstand constitutional challenge provided that “there [is] some rational connection between the fact proved and the ultimate fact presumed, and . . . the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate” (Mobile, J. & K. C. R. Co. v Turnipseed, 219 US 35, 43 [1910]; see also United States v Romano, 382 US 136, 139 [1965]). New York *428 has applied a “higher standard of rational connection” to statutory presumptions in criminal cases, requiring “ ‘a reasonably high degree of probability’ that the presumed fact follows from those proved directly” (People v Leyva, 38 NY2d 160, 165-166 [1975]).
There is a “reasonably high degree of probability” that New York businesspeople and entities desirous of raising money that are compensated for referring customers who ultimately make purchases will solicit business from those with whom they are familiar and encourage sales. It is also highly probable that New York residents will more likely than not have ties to other New York residents and it is not irrational to presume that at least some of them will actively solicit business for the remote seller from within the state from others within the state.
In any event, the statutory presumption is by its terms and effect rebuttable. The commission-agreement provision does not conclude that all commissioned residents definitively will solicit business for the seller in a manner that would justify tax collection. Sellers can establish that none of their contractors engage in New York solicitation for them. Out-of-state sellers know exactly with whom they are contracting and can reasonably control and remain informed about whether their New York contractors solicit business from other New York residents.
Out-of-state sellers can shield themselves from a tax-collection obligation by altogether prohibiting in-state solicitation activities referring to them or encouraging sales on their behalf that would subject them to a tax-collection requirement and, as a condition of compensation, requiring that their New York contractors attest to compliance. To the extent that the exercise may be burdensome, it is a cost of doing business associated with the decision to contract with New York residents and offer them incentives for bringing them sales when such an arrangement is profitable to the vendor.
Additionally, Amazon’s due process vagueness challenge must be analyzed on an as-applied basis (see United States v Powell, 423 US 87, 92 [1975] [vagueness challenges not involving First Amendment freedoms must be examined based on the facts at hand]; see also People v Stuart, 100 NY2d 412, 422 n 8 [2003]). There is no allegation that the provision is impermissibly vague as applied to Amazon here. Moreover, the statute’s applicability upon entry into an agreement with an in-state resident for a commission “or other consideration” based on direct referral of New York customers or “indirect” referrals is not so *429 vague and standardless as to leave the public uncertain about its reach.[3]
Finally, Amazon alleges that it has been denied equal protection because the statute “is targeted at Amazon” and the “Equal Protection Clause prohibits government action intentionally directed at a ‘class of one’ and motivated by animus” (Mastro aff, exhibit 1, H 55). To state a “class-of-one” claim, however, a plaintiff must allege that it was intentionally treated differently from similarly situated individuals (see e.g. Seabrook v City of New York, 509 F Supp 2d 393, 400 [SD NY 2007]; Village of Willowbrook v Olech, 528 US 562, 564 [2000] [plaintiff must allege intentional different treatment from others similarly situated without any rational basis for the difference in treatment]; see also Trump v Chu, 65 NY2d 20, 25 [1985]). Amazon’s complaint is devoid of any assertion that the State has actually treated it any differently from others that are similarly situated. In fact, Amazon’s complaint acknowledges that the statute “was intended to impose tax-collection obligations on out-of-state Internet retailers such as Amazon” and sets forth that the enactment would also apply to other retailers (Mastro aff, exhibit 1, 1111 30, 31).
Thus, Amazon’s second and third causes of action must be dismissed as well.
In the end, the commission-agreement provision does not broadly tax any and all Internet sales to New York consumers. It requires a substantial nexus between an out-of-state seller and New York through a contract to pay commissions for referrals with a New York resident along with realization of more than $10,000 of revenue from New York sales earned through the arrangement. The neutral statute simply obligates out-of-state sellers to shoulder their fair share of the tax-collection burden when using New Yorkers to earn profit from other New Yorkers.
Accordingly, it is ordered that the State’s motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) is granted and Amazon’s cross motion for summary judgment is denied as moot.

. Facts taken from the verified complaint are deemed true solely for purposes of this motion to dismiss.

. Amazon does not contractually prohibit in-state solicitation of business on its behalf.

. Interestingly, in its operating agreement, Amazon prohibits its associates from “directly or indirectly [offering] any person or entity any consideration or incentive” for using links set up to access Amazon’s site, employing the same “vague” language about which it complains (Mastro aff, exhibit 24,114 [emphasis added]).