[913 NYS2d 129]

AMAZON.COM, LLC, et al., Appellants, v NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE et al., Respondents.

OVERSTOCK.COM, INC., Appellant, v NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE et al., Respondents.

First Department, November 4, 2010

186

**APPEARANCES OF COUNSEL**

*Gibson, Dunn & Crutcher LLP*, New York City (*Randy M. Mastro, Gabriel Herrmann* and *Timothy D. Swain* [and *Julian W. Poon, Taheane E. Kapur* and *Kahn A. Scolnick*, of the California bar, admitted pro hac vice] of counsel), for Amazon.com, LLC, and another, appellants.

*Bracewell & Giuliani, LLP*, New York City (*Daniel S. Connolly, Rachel B. Goldman, David A. Shargel* and *David J. Ball* of counsel), for Overstock.com, Inc., appellant.

*Andrew M. Cuomo, Attorney General*, New York City (*Peter Karanjia, Barbara D. Underwood* and *Andrew D. Bing* of counsel), for respondents.

*Venable LLP*, New York City (*Gregory W. Gilliam* of counsel), for Performance Marketing Alliance, amicus curiae.

*McDermott Will & Emery LLP*, New York City (*Arthur R. Rosen* of counsel), for Tax Foundation, amicus curiae.

*Stewart Occhipinti, LLP*, New York City (*Charles A. Stewart, III* of counsel), for American Legislative Exchange Council, amicus curiae.

## OPINION OF THE COURT

NARDELLI, J.

In a case with far-reaching ramifications because of the exponential expansion of cyberspace in general, and commerce over the Internet in particular, the issue presented is the constitutionality of a recent amendment to Tax Law § 1101 (b) (8) (vi) intended to force on-line retailers to collect a sales tax on purchases made by New York residents. Since we find that there are issues of fact concerning some of the as-applied challenges raised by plaintiffs to the statute, we conclude that the dismissal of the entire complaint was premature, and remand for further proceedings. We do, however, find that the facial challenges fail to state a cause of action, and declare in the State's favor to that extent.

In New York "every vendor of tangible personal property" is required to collect sales and use taxes on sales of tangible personal property (Tax Law § 1131 [1]; *see also* § 1101 [b] [8]; §§ 1105, 1110, 1132 [a]). A "vendor" is defined to include, inter alia, "[a] person who solicits business . . . by employees, independent contractors, agents or other representatives . . . and by reason thereof makes sales to persons within the state of tangible personal property or services" (Tax Law § 1101 [b] [8] [i] [C] [I]). Vendors are required to register with the Department of Taxation and Finance (DTF), and are granted certificates of authority permitting them to collect sales taxes (Tax Law § 1134 [a]).

On April 23, 2008, the Tax Law was amended to reflect the reality that many sales of goods to New York residents are effected through the Internet, and to place upon certain sellers who use the Internet the same responsibilities that are imposed upon other out-of-state sellers. The statute, as amended, created a presumption that an out-of-state seller was

> "soliciting business [in New York] through an independent contractor or other representative if the

seller enters into an agreement with a resident of this state under which the resident, for a commission or other consideration, directly or indirectly refers potential customers, whether by a link on an internet website or otherwise, to the seller, if the cumulative gross receipts from sales by the seller to customers in the state who are referred to the seller by all residents with this type of an agreement with the seller is in excess of ten thousand dollars during the preceding four quarterly periods ending on the last day of February, May, August, and November" (Tax Law § 1101 [b] [8] [vi]).

The effect of this amendment was that the responsibility to collect sales or use taxes was now imposed on an out-of-state seller which used an in-state resident to solicit business from New York residents through an Internet Web site.

The law further provided, however, that the presumption that the vendor was doing business in New York could be rebutted by proof that the resident with whom the seller had an agreement "did not engage in any solicitation in the state on behalf of the seller that would satisfy the nexus requirement of the United States constitution during the four quarterly periods in question" (*id.*).

Shortly after the statute became effective, and Amazon instituted its lawsuit, DTF issued two memoranda, known as Technical Services Bureau Memoranda. In the first memorandum (TSB-M-08 [3]S [dated May 8, 2008]), DTF advised that the statute applied to sellers, including e-commerce retailers, which "solicit business within the state through employees, independent contractors, agents or other representatives and, by reason thereof, make sales" to New York residents of taxable property or services. This memorandum also offered six examples of how certain transactions would be affected by the statute. Example 4 made clear that the statutory presumption would only be triggered by commission-based referral agreements, as opposed to flat-fee agreements. The memorandum further explained that the presumption that solicitation had occurred could be rebutted if the seller established that "the only activity" of its in-state representatives consisted of the placement of Internet links connecting their Web sites to the out-of-state seller's Web site, i.e., advertisers only, and that "none of the resident representatives engage in any solicitation activity

in the state targeted at potential New York State customers on behalf of the seller." Thus, more than a mere pass-through "click" on the Internet was required to impose tax-collection responsibilities on the out-of-state sellers. The in-state contractor actually has to engage affirmatively in customer solicitation before the out-of-state vendor becomes subject to the statute.

The DTF then issued a second memorandum (TSB-M-08 [3.1]S [dated June 30, 2008]) which set forth a "safe harbor" procedure whereby sellers could rebut the presumption by including in their business-referral agreements a provision prohibiting their in-state representatives from "engaging in any solicitation activities in New York State that refer potential customers to the seller," and requiring each in-state representative to submit a signed certification every year, stating that it has not engaged in any such solicitation during the prior year.

Plaintiff Amazon.com, LLC is a limited liability company incorporated in Delaware, and Amazon Services, LLC is a limited liability company incorporated in Nevada. Neither has offices, employees or property in New York. New York residents order products from Amazon solely through its Web site. Amazon does not have any in-state representatives in New York to assist customers in placing orders, and all technical support telephone calls or e-mails are handled by Amazon's representatives located outside of New York. Products sold by Amazon are shipped directly to customers from fulfillment centers located outside New York.

Amazon, however, has developed a program using entities known as Associates which allows hundreds of thousands of independent third parties located around the world, many of which have provided Amazon with New York addresses, to advertise the Web site "Amazon.com" on their own Web sites. Visitors to the Affiliates' Web sites can click on the link and immediately be redirected to Amazon.com. If the visitor ends up making a purchase from Amazon on the Amazon.com Web site—and only in that event—the Associate is paid a commission. Any purchase made by the visitor takes place solely with Amazon, and all customer inquiries are handled only by Amazon, its corporate affiliates, or other sellers without any involvement of the Associate.

In the standard operating agreement which governs the relationship between Amazon and its Associates, Amazon expressly disavows any control over their activities or Web site content,

except to state that Associates are prohibited from "misrepresent[ing] or embellish[ing]" the relationship between themselves and Amazon.

Coplaintiff Overstock.com is a Delaware corporation with its principal and only place of business in Utah. As Amazon does, it offers various products over the Internet at discounted prices. Overstock does not have any retail stores or outlets. All goods purchased through Overstock.com are shipped to customers directly via the mail or by common carrier. None of Overstock's employees or representatives live in New York. Like Amazon, Overstock allows owners of other Web sites located around the world to advertise Overstock.com on their own Web sites. Advertisements on the Web sites of these owners, known as Affiliates, consist of electronic links and banners. When a visitor to the Affiliate's Web site clicks on the link or banner, the visitor's browser navigates to the Overstock.com Web site.

The Master Agreement between Overstock and the Affiliate permits the Affiliate to provide advertising for Overstock in the form of links or banners. Affiliates are paid a commission only when a customer clicks on the link or banner and arrives at Overstock's Web site, and then purchases goods from Overstock. Furthermore, the Master Agreement provides that an Affiliate is only paid a commission if the Affiliate's Web site is the last site visited before Overstock's Web site, and the customer makes a purchase within a specified period of time. After the statute was enacted on April 23, 2008, Overstock suspended its relationships with all of its Affiliates in New York.

On April 25, 2008, two days after the bill was signed by the Governor, Amazon filed a complaint seeking declaratory and injunctive relief on the ground that the statute was unconstitutional. Amazon asserted claims for violation of the Commerce, Due Process and Equal Protection Clauses of the United States Constitution, as well as the Due Process and Equal Protection Clauses of the New York State Constitution. Other than by passing reference, however, the challenges under the New York State Constitution are not pursued on this appeal.

Overstock's complaint was filed on May 30, 2008. It also sought injunctive and declaratory relief, but only asserted claims for violation of the Commerce Clause of the United States Constitution, and the Due Process and Equal Protection Clauses of the United States Constitution and New York State Constitu-

tion. Its claims under the State Constitution are likewise not pursued on this appeal.[1]

The State moved by order to show cause to dismiss the complaints pursuant to CPLR 3211 (a) (2) and (7) on July 17, 2008. Subsequently, on August 11, 2008, Amazon cross-moved for summary judgment on its first and second causes of action, which encompassed its Commerce Clause and Due Process Clause causes of action.[2] Overstock moved on August 12, 2008 for similar relief.

In response to the cross motions, the State submitted evidence purporting to demonstrate that Amazon's and Overstock's Affiliates in fact engaged in activities that arguably amounted to solicitation of New York business, and argued generally that the claims that the statute was unconstitutional as applied could not be determined as a matter of law without discovery into Amazon's and Overstock's business practices. The materials proffered by the State included documents relating to Amazon's "SchoolRewards" affiliates program and other similar programs, by which local (including New York-based) nonprofit organizations are given a commission when they lead visitors to their Web sites to purchase goods on Amazon.com. The State argued that, due to the local nature of these nonprofit organizations, the visitors to their Web sites were most likely to be based locally as well and, thus, it was a reasonable assumption that these organizations were actively targeting and soliciting other New York residents in their communities to purchase goods from Amazon so as to benefit the organization.

In an order entered January 15, 2009, the court granted the State's motion to dismiss Amazon's complaint in its entirety and denied Amazon's cross motion for summary judgment as moot (23 Misc 3d 418 [2009]). The court found the Commerce Clause challenge unavailing because the statute was targeted at requiring tax calculation from out-of-state sellers which avail themselves of in-state contractors, and was "carefully crafted to ensure that there is a sufficient basis for requiring collection of New York taxes and, if such a basis does not exist, it gives the

---

1. Also submitting amicus curiae briefs on this appeal, all contending that the statute is unconstitutional under the Commerce Clause, are the Tax Foundation, American Legislative Exchange Council, and Performance Marketing Alliance.

2. Although Amazon did not move for relief on its equal protection claims, their viability is addressed on appeal because the State obtained dismissal of the complaint in its entirety.

seller an out" through the ability to rebut the statutory presumption that it qualifies as a vendor (*id.* at 425). The court also rejected the as-applied Commerce Clause challenge because it found that Amazon did not allege in its complaint that "its New York associates do not solicit business for it from New York customers" (*id.* at 427).

With regard to Amazon's due process challenges, the court reasoned that "[t]here is a 'reasonably high degree of probability' that New York businesspeople and entities desirous of raising money that are compensated for referring customers who ultimately make purchases will solicit business from those with whom they are familiar and encourage sales," and that "[i]t is also highly probable that New York residents will more likely than not have ties to other New York residents and it is [therefore] not irrational to presume that at least some of them will actively solicit business for the remote seller from within the state from others within the state" (*id.* at 428). In addition, the court stated, the "statutory presumption is by its terms and effect rebuttable" (*id.*). The court also rejected the vagueness challenge because "the statute's applicability upon entry into an agreement with an in-state resident for a commission 'or other consideration' based on direct referral of New York customers or 'indirect' referrals is not so vague and standardless as to leave the public uncertain about its reach" (*id.* at 428-429). Finally, the court held that Amazon's "class-of-one" equal protection challenge failed to state a cause of action because Amazon's complaint failed to assert that the State had treated it differently from others similarly situated (*id.* at 429).

In a separate order entered January 15, 2009, the court similarly granted the State's motion to dismiss Overstock's complaint and denied Overstock's cross motion to dismiss as moot "[f]or the reasons stated" in the Amazon decision.

Amazon and Overstock appealed directly to the Court of Appeals, pursuant to CPLR 5601 (b) (2). By separate orders dated May 5, 2009, the Court of Appeals transferred the appeals to this Court, on the ground that "a direct appeal does not lie when questions other than the constitutional validity of a statutory provision are involved" (12 NY3d 827 [2009]; 12 NY3d 830, 831 [2009]).

On this appeal Amazon raises three challenges to the statute. It does not pursue its facial claims with the Commerce Clause, but argues that, as applied to it, the statute is unconstitutional because it lacks a "substantial nexus" within the state. Amazon

also argues that the statute violates the Due Process Clause because, facially and as applied, it enacts an irrational and irrebuttable presumption, and is also vague. It lastly argues that the statute violates the Equal Protection Clause because it targets Amazon, one of the world's largest Internet retailers, in bad faith.

Overstock argues that the statute violates the Commerce Clause, both on its face and as applied to Overstock. It likewise argues that the statute is unconstitutional on its face because it runs afoul of the Due Process Clause because of its vagueness.

## Facial Challenges

■ We address first the facial challenges. Initially, as was recently reiterated by the Supreme Court in *Washington State Grange v Washington State Republican Party* (552 US 442 [2008]), facial challenges to a statute's constitutionality are disfavored. "[A] plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid', *i.e.*, that the law is unconstitutional in all of its applications" (*id.* at 449, quoting *United States v Salerno*, 481 US 739, 745 [1987]; *see also Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443, 448 [2003]; *Cohen v State of New York*, 94 NY2d 1, 8 [1999]).[3] Since "[l]egislative enactments enjoy a strong presumption of constitutionality . . . parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity 'beyond a reasonable doubt' " (*LaValle v Hayden*, 98 NY2d 155, 161 [2002] [citations omitted]). "Moreover, courts must avoid, if possible, interpreting a presumptively valid statute in a way that will needlessly render it unconstitutional" (*id.*).

## Commerce Clause Facial Challenge

Article I (§ 8 [3]) of the US Constitution expressly authorizes Congress to "regulate Commerce with foreign Nations, and among the several States." While the Constitution "says noth-

---

**3.** We note that Overstock, relying on language in a footnote in *Chicago v Morales* (527 US 41, 55 n 22 [1999]), contends that the "no set of circumstances" standard is not the appropriate test, and claims that the test has been rejected by the Supreme Court. Yet, the *Washington State Grange* case was issued nine years after *Morales,* and Justice Stevens, the author of the plurality decision in *Morales*, joined the majority decision in *Washington State Grange.* Thus, in the absence of any unequivocal holding to the contrary, we conclude that continued reliance on the "no set of circumstances" standard is warranted.

ing about the protection of interstate commerce in the absence of any action by Congress . . . the Commerce Clause is more than an affirmative grant of power; it has a negative sweep as well" (*Quill Corp. v North Dakota*, 504 US 298, 309 [1992]). " '[B]y its own force', [it] prohibits certain state actions that interfere with interstate commerce" (*id.*, quoting *South Carolina Highway Dept. v Barnwell Brothers, Inc.*, 303 US 177, 185 [1938]).

In *Moran Towing Corp.*, the Court of Appeals outlined the four-prong test for determining whether a state tax violates the Commerce Clause. The court stated that the tax will be upheld " '[1] when the tax is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State' " (99 NY2d at 449, quoting *Complete Auto Transit, Inc. v Brady*, 430 US 274, 279 [1977]). As was the situation in *Moran,* the challenge to the tax in this case only implicates the first prong, i.e., whether the activity involved has a substantial nexus with the taxing state.

The sine qua non for the finding that a party has a substantial nexus with New York, and is thus required to collect sales or use taxes, is that it have a physical presence within the state (*id.* at 449, citing *Matter of Orvis Co. v Tax Appeals Trib. of State of N.Y.*, 86 NY2d 165 [1995], *cert denied sub nom. Vermont Info. Processing, Inc. v Commissioner, N.Y. State Dept. of Taxation & Fin.*, 516 US 989 [1995]; *see also National Bellas Hess, Inc. v Department of Revenue of Ill.*, 386 US 753 [1967]). Nevertheless, "[w]hile a physical presence of the vendor is required, it need not be substantial" (*Orvis Co.* at 178). While it must constitute more than a " 'slightest presence' " (*id.*, quoting *National Geographic Soc. v California Bd. of Equalization*, 430 US 551, 556 [1977]), "it may be manifested by the presence in the taxing State of the vendor's property or the conduct of economic activities in the taxing State performed by the vendor's personnel or on its behalf" (*Orvis Co.* at 178).

*National Bellas Hess*, discussed at length in *Orvis*, involved an out-of-state mail-order vendor whose only connection with customers in the state of Illinois was by common carrier or the United States mail. The Supreme Court observed that in order to uphold the imposition of a sales tax by Illinois on the vendor's transactions, it "would have to repudiate totally the sharp distinction . . . between mail order sellers with retail outlets, solicitors, or property within a State, and those who do no more

than communicate with customers in the State by mail or common carrier as part of a general interstate business" (386 US at 758). The Court went on to state, "[T]his basic distinction, which until now has been generally recognized by the state taxing authorities, is a valid one, and we decline to obliterate it" (*id.*).[4]

On the other hand, where a Pennsylvania company which manufactured aerospace fasteners such as nuts and bolts, and whose only presence in the state of Washington was an engineer who operated from his home, and whose responsibilities were essentially encompassed in communicating with the Boeing Company as to its needs and requirements, but did not include taking orders, the substantial nexus requirement was found to have been met (*see Standard Pressed Steel Co. v Department of Revenue of Wash.*, 419 US 560 [1975]). In upholding the tax, the Court framed the threshold inquiry as " 'whether the state has given anything for which it can ask return' " (*id.* at 562, quoting *Wisconsin v J. C. Penney Co.*, 311 US 435, 444 [1940]), and answered by stating that the company's employee "made possible the realization and continuance of valuable contractual relations between [the company] and Boeing" (*Standard Pressed Steel Co.* at 562).

■ Our analysis leads us to the conclusion that on its face the statute does not violate the Commerce Clause. It imposes a tax-collection obligation on an out-of-state vendor only where the vendor enters into a business-referral agreement with a New York State resident, and only when that resident receives a commission based on a sale in New York. The statute does not target the out-of-state vendor's sales through agents who are

---

4. The Supreme Court adhered to the "bright line" requirement that in order to impose a duty on the out-of-state seller to collect sales taxes it must have a demonstrable, albeit minimal, presence in the taxing state, in *Quill Corp. v North Dakota* (504 US 298 [1992]). In pertinent part, the Court stated, "[s]uch a rule firmly establishes the boundaries of legitimate state authority to impose a duty to collect sales and use taxes and reduces litigation concerning those taxes" (*id.* at 315). In language that is at once ironic and prescient, it also observed,

> "[t]his benefit is important, for as we have so frequently noted, our law in this area is something of a 'quagmire' and the 'application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation' " (*id.* at 315-316, quoting *Northwestern States Portland Cement Co. v Minnesota*, 358 US 450, 457-458 [1959]).

not New York residents. Thus, the nexus requirement is satisfied.

■ Of equal importance to the requirement that the out-of-state vendor have an in-state presence is that there must be solicitation, not passive advertising. While Tax Law § 1101 (b) (8) (vi) creates the presumption that the in-state agent will solicit, it provides the out-of-state vendor with a ready escape hatch or safe harbor. The vendor merely has to include in its contract with the in-state vendor a provision prohibiting the in-state representative from "engaging in any solicitation activities in New York State that refer potential customers to the seller",[5] and the in-state representative must provide an annual certification that it has not engaged in any prohibited solicitation activities as outlined in the memorandum. Thus, an in-state resident which merely acts as a conduit for linkage with the out-of-state vendor will be presumed to have not engaged in activity which would require the vendor to collect sales taxes. Presumably, there are representatives which will be able to execute the annual certification without fear of making a misrepresentation.

On the other hand, the State has a legitimate basis to conclude that many other in-state representatives will engage in direct solicitation, rather than mere advertising. For instance, a document prepared by Amazon explaining the benefits of joining the Associates program states, in pertinent part, "Our compensation philosophy is simple: reward Associates for their contributions to our business in unit volume and in growth. Amazon is a fast growing business and we want our Associates to grow with us." The overview document goes on to state, "The Performance structure allows you to earn higher fees when you generate a sufficient volume of referrals that result in sales at Amazon.com during a month. *The higher your referrals, the greater your earnings will be.*" (Emphasis added.)

■ Clearly, Amazon's program, reasonably, is not designed for the passive advertiser, but seeks growth by reliance upon repre-

---

5. (DTF mem TSB-M-08 [3.1]S [dated June 30, 2008].) The memorandum provides, not unreasonably, that solicitation activities can include "distributing flyers, coupons, newsletters and other printed promotional materials, or electronic equivalents; verbal solicitation (e.g., in-person referrals); initiating telephone calls; and sending e-mails." Additionally, in a recognition of the potential use of fundraisers conducted by organizations, the memorandum provides that in an agreement with a club or nonprofit group, "the contract or agreement must provide that the organization will maintain on its Web site information alerting its members to the prohibition against each of the solicitation activities described above."

sentatives who will look to solicit business. The obligations imposed by the State to collect the tax only arise when the paradigm shifts from advertising to solicitation. Thus, until such time as the out-of-state vendor produces a certification from every one of its New York representatives that they have not engaged in solicitation, the facial challenge based upon the Commerce Clause must fail, since there is a set of circumstances under which the statute would be valid, i.e., when a New York representative uses some form of proactive solicitation which results in a sale by Amazon and a commission to the representative, and the representative has an in-state presence sufficient to satisfy the substantial nexus test.

### Due Process Facial Challenges

Amazon and Overstock make two main due process arguments. First, they argue that the statute violates due process because it creates a presumption that is both irrational and irrebuttable. Second, they argue that the statute is void for vagueness. Both arguments challenge the fairness of requiring them and other out-of-state retailers like them to collect sales tax from New York residents referred to them by their New York-based Affiliates.

In *Quill* (504 US 298 [1992], *supra*), the Supreme Court made clear that the Due Process Clause implicates fundamentally different concerns from the Commerce Clause (*id.* at 306-318). The Court stated:

> "[d]ue process centrally concerns the fundamental fairness of governmental activity. Thus, at the most general level, the due process nexus analysis requires that we ask whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him . . . In contrast, the Commerce Clause and its nexus requirement are informed not so much by concerns about fairness for the individual . . . as by structural concerns about the effects of state regulation on the national economy" (*id.* at 312).

Thus, the Commerce Clause operates to "limit the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce" (*id.* at 313), while the Due Process Clause ensures that there is "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax, and that the income at-

tributed to the State for tax purposes [is] rationally related to values connected with the taxing State" (*id.* at 306 [internal quotation marks and citations omitted]).

## Claims of Irrebuttable Presumption

The Supreme Court has noted that irrebuttable presumptions are looked upon with disfavor as violative of due process (*see e.g. Vlandis v Kline*, 412 US 441, 446 [1973]). Nevertheless, rational presumptions, even in criminal cases, are commonly upheld (*see e.g. Tot v United States*, 319 US 463 [1943]; *People v Leyva*, 38 NY2d 160 [1975]).

The test for assessing the validity of a presumption is that there be a rational connection between the basic facts proven and the ultimate fact presumed (*County Court of Ulster Cty. v Allen*, 442 US 140, 165 [1979]). Succinctly stated, the validity of the presumption turns on whether it is more likely than not that the fact presumed flows from the fact proven (*id.*). In New York the test is even higher, i.e., "the connection must assure 'a reasonably high degree of probability' that the presumed fact follows from those proved directly" (*People v Leyva*, 38 NY2d at 166, quoting *People v McCaleb*, 25 NY2d 394, 404 [1969]).

■ The statute at issue makes the presumption that in-state solicitation occurs when an in-state representative is paid a commission on a per-sale basis, after a New York purchaser accesses its Web site and "clicks" through to make a purchase at the out-of-state vendor's Web site. This is not an irrational presumption. Both the out-of-state vendor and the in-state representative seek, quite frankly, to make money. It is not irrational to presume that the in-state representative will engage in various legal methods to enhance earnings. Advertising would be one of those methods, but mere advertising does not implicate the statute. Solicitation, however, in varying forms, is another extremely plausible and likely avenue by which any competent businessperson would seek to improve revenues.

In the event, however, the in-state representative wishes to chance success merely on luck and good fortune, without expending initiative, the statute permits it to offer proof that it did not engage in solicitation. The implementing regulation provides that this proof can come in the form of a certification from the in-state representative that it did not engage in solicitation.

### Due Process Vagueness Claim

The second prong of the due process challenge is the claim that the statute is unconstitutionally vague. Amazon takes issue with the words "or indirectly" (in discussing referrals), and "other consideration" (in discussing the manner of recompense to the in-state representative). Overstock likewise takes umbrage at the use of the words "or indirectly," but also complains that the failure to define "solicitation" is fatal. It claims that since the Internet has drastically changed the manner in which commerce is transacted, the medium requires a definition tailored to this new world of communication.

Initially, both Amazon and Overstock are correct in their assertions that, at least under certain circumstances, a statute may be challenged for unconstitutional vagueness both facially and as applied (*see People v Stuart*, 100 NY2d 412, 421 [2003]). Yet, both the decision in *Stuart* (100 NY2d at 422 n 8; *but see* 100 NY2d at 429-433 [Kaye, Ch. J., concurring]) and the Supreme Court in *Chapman v United States* (500 US 453, 467 [1991]) indicate that a facial challenge is only implicated when First Amendment rights are at issue. This is not the case here.

For purposes of resolving plaintiffs' vagueness challenge, however, our inquiry will be directed first to the as-applied challenge, which we conclude is unavailing. The finding that the as-applied vagueness challenge is not substantiated, of necessity, leads to the conclusion that "the facial validity of the statute" is confirmed.

▇ The words "or indirectly," criticized by both Amazon and Overstock, do not present any confusion. The in-state buyer can be referred by the in-state representative "directly" to the out-of-state vendor by a click on its Web site. We take the words "or indirectly" to mean by a manner other than a direct click, perhaps just by providing an e-mail address of the out-of-state vendor. In either case, the result is the same—a buyer has been routed to a seller by an intermediary.

Amazon's criticism of the words "or other consideration" is likewise perplexing. The statute simply provides that if there is some type of remuneration to the in-state representative other than a direct payment, the transaction will still be encompassed by the statute. Presumably, "other consideration" could include such items as a bonus program, or discounting of the vendor's goods if purchased by the representative, either in lieu of or in addition to the direct payment. The rationale for the language turns not on what form the consideration takes, but on the fact

that the in-state representative is being compensated for its efforts.

Finally, with regard to the vagueness challenge, Overstock complains that the word "solicitation" is so imprecise, in this Internet age, as to be unconstitutionally vague. Yet, while the Internet certainly represents a significant change in communication, the argument that it is a brave new world requiring its own definitions of terms that previously had a clear meaning is not persuasive. An advertisement in a newspaper is clearly not solicitation, as it is geared to the public at large. Likewise, the maintenance of a Web site which the visitor must reach on his or her own initiative is not, under the statute or the advisory memoranda, a solicitation.

On the other hand, the targeting of a potential customer by the transmission of an e-mail is no different from a direct telephone call or a mailing to a customer. Both constitute active initiatives by a party seeking to generate business by pursuing a sale.

### Ripeness of Issues for Judicial Resolution

Preliminary to the arguments that the statute, as applied, is unconstitutional on Commerce Clause, Due Process Clause and Equal Protection Clause grounds, the State's claim that the issues are not ripe for judicial review must be addressed. The State argues that because an enforcement action has yet been commenced, and thus the statute has not been applied to either Amazon or Overstock, any factual review is not ripe. The State also argues that plaintiffs are precluded from bringing this action because they have not exhausted their administrative remedies.

In support of its argument that the as-applied challenges are not ripe, the State relies upon the decision in *Church of St. Paul & St. Andrew v Barwick* (67 NY2d 510 [1986], *cert denied* 479 US 985 [1986]). In *Barwick* a church brought a declaratory judgment action contending that the Landmarks Law was unconstitutionally applied to it, and that the restrictions imposed prevented it from undertaking structural renovations, and, in turn, that failing to undertake these renovations would expose it to criminal sanctions. The Court noted that "a claim based upon an injury which might never occur should be dismissed" (*id.* at 518). In order to determine ripeness, it reasoned, there must be a determination that the issues are appropriate for judicial resolution (i.e., the action being reviewed

must be final, and the controversy may be determined as a "purely legal" question) and an assessment that the hardship to the parties involved if judicial action is denied will be both significant and direct (*id.* at 519-520, citing *Abbott Laboratories v Gardner*, 387 US 136 [1967]; *Toilet Goods Assn., Inc. v Gardner*, 387 US 158 [1967]; *Gardner v Toilet Goods Assn., Inc.*, 387 US 167 [1967]). The Court found that since the effect on the plaintiff of being subject to the Landmarks Law could not yet be gauged because it had not yet sought the appropriate permission to undertake renovations, the issue was not ripe (*Barwick*, 67 NY2d at 522-523).

In *Lorillard Tobacco Co. v Roth* (99 NY2d 316 [2003]), which also presented a challenge to a tax law, the Court of Appeals rejected an argument by DTF, premised on *Barwick*, that the controversy was unripe because DTF had not commenced any enforcement action (*id.* at 321 n 3). The Court stated that DTF's reliance on *Barwick* was "misplaced" because, even though an enforcement action against the plaintiffs, a cigarette manufacturer and retailer, had not yet been initiated, DTF had "allegedly used threats to force retailers to stop participating in [the cigarette marketing promotions at issue], and this constitute[d] sufficiently 'direct and immediate' harm for jurisdictional purposes" (*id.*, quoting *Barwick* at 520).

█ In this case, DTF has made clear its position that the statute applies to the activities of the New York-based representatives taken on plaintiffs' behalf, and its intention to enforce the statute against them. Thus, the threat of harm to them is as equally "direct and immediate" as it was to the plaintiffs in *Lorillard* (*see also MedImmune, Inc. v Genentech, Inc.*, 549 US 118, 128-129 [2007] ["(W)here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate (US Constitution) Article III jurisdiction"]).

The State also argues that the as-applied claims should not be decided by the courts at this stage because Amazon and Overstock have not exhausted their administrative remedies with respect to those claims. It contends that these claims should be addressed in the first instance to the applicable administrative agency, DTF, so that the necessary factual record

can be established, either in an enforcement proceeding (if they choose to take their chances and not collect the tax) or a refund action (if they choose to collect it in an abundance of caution).

The New York courts have generally recognized an exception to the exhaustion requirement where a party is challenging the constitutionality or the basic applicability of a statute or regulation (*see e.g. Matter of First Natl. City Bank v City of N.Y. Fin. Admin.*, 36 NY2d 87, 92 [1975] ["When a tax statute . . . is alleged to be unconstitutional, by its terms or application, or where the statute is attacked as wholly inapplicable, it may be challenged in judicial proceedings other than those prescribed by the statute as 'exclusive' "]; *Martinez 2001 v New York City Campaign Fin. Bd.*, 36 AD3d 544, 548 [2007]).

■ The State argues, however, that this exception only applies where the issues are purely legal, and do not require the resolution of factual issues (*see Dun & Bradstreet, Inc. v City of New York*, 276 NY 198, 206 [1937]; *Matter of Between the Bread II v Urbach*, 234 AD2d 724 [1996]). Generally, however, these cases involve factual issues as to the amount of tax that is owed, for example, not whether the statute is constitutional as applied to the challenger in the first place (*see Empire State Bldg. Co. v New York State Dept. of Taxation & Fin.*, 185 AD2d 201, 201 [1992], *affd* 81 NY2d 1002 [1993], citing *Tully v Griffin, Inc.*, 429 US 68, 75 [1976]). In this case, the circumstances are exigent enough to warrant review now. Plaintiffs are conducting an ongoing business, and require finality and clarity as to the extent of their present obligations.

## Commerce Clause As-Applied Claim

■ The first of the "as-applied" arguments to be addressed is the claim that the statute violates the Commerce Clause. Plaintiffs argue that since their representatives do nothing more than advertise on New York-based Web sites, the statute cannot be applied in a constitutional manner. Inasmuch as there has been limited, if nonexistent, discovery on this issue we are unable to conclude as a matter of law that plaintiffs' in-state representatives are engaged in sufficiently meaningful activity so as to implicate the State's taxing powers, and thus find that they should be given the opportunity to develop a record which establishes, actually rather than theoretically, whether their in-state representatives are soliciting business or merely advertising on their behalf. Although, as noted above, the advisory memoranda describe a process by which the representatives can

certify that they do not solicit, the possibility remains that many of the in-state representatives could certify that they are not soliciting, and yet, the DTF could find that the activities in which they are engaged do constitute solicitation. Additionally, it is within the realm of possibility that the DTF could find that purported out-of-state representatives are actually located in-state by virtue of misrepresenting their address. It would also afford plaintiffs the opportunity to establish the bona fides of their other claims, such as whether it is impossible to identify who their in-state representatives are (even though plaintiffs presumably need an address to which to send, inter alia, any commission checks).

We are also unable to determine on this record whether the in-state representatives are engaged in activities which are "significantly associated" with the out-of-state retailer's ability to do business in the state, as addressed in *Tyler Pipe Industries, Inc. v Washington State Dept. of Revenue* (483 US 232, 250 [1987]). In an affidavit from its vice-president, Amazon represents that, in 2007, its sales to New York State residents referred by Associates which provided Amazon with New York addresses upon registration constituted less than 1.5% of its total sales to New York State residents. It argues that this revenue is not "significantly associated" with its ability to do business in New York.[6] Whether plaintiffs can meet their burden on this issue remains to be seen, but we cannot, on this record, make a determination.

### Due Process As-Applied Claim

 Amazon and Overstock also raise an "as-applied" due process challenge based on their contention that the statute is both irrational and irrebuttable as applied to them specifically. Ultimately, the determining factor in this inquiry is whether it is irrational to conclude that the Amazon and Overstock agreements with New York-based Web sites, by which they compen-

---

6. The affidavit did not supply the sales data upon which the calculation was based. An Internet search, however, found, and we take judicial notice, that on April 22, 2010 Amazon reported that its first quarter sales in Canada and the United States were $3,780,000,000 (which would translate on an annual basis into North American sales of over $15,000,000,000). What percentage of those sales were made in New York cannot be quantified from the data available. Nor can the actual percentage made as a result of New York residents accessing New York-based Associates be calculated. Even 1.5% of New York sales by New York Associates, however, would not appear to be an insignificant number.

sate the New York-based Web sites in exchange for the New York-based Web sites' referral of customers to Amazon and Overstock through Web links, are by their nature sufficient to establish that the New York-based Web sites will engage in other activity that goes beyond mere advertising and actually amounts to solicitation—to such a level that would satisfy the Commerce Clause's substantial nexus requirement—of New York business on Amazon's and Overstock's behalf. The existence of Amazon's SchoolRewards and similar programs is strong evidence that the presumption is valid. Nevertheless, we remand for further discovery so that plaintiffs can make their record that all their in-state representatives do is advertise on New York-based Web sites.

Amazon's and Overstock's claim that they cannot "control and remain informed about whether their New York contractors solicit business from other New York residents" because they have relationships with "hundreds of thousands" of such entities and cannot possibly keep tabs on all of them in a manner sufficient to rebut the presumption is belied by the fact that they have contracts with all of their representatives, presumably including addresses. In any event, they can easily include the terms recommended in the TSB-Ms in their standard affiliate agreements to protect themselves. Nevertheless, we conclude that it would be premature to find that even as applied, the due process challenges are unavailing, whether because the statute creates an illegal and irrebuttable presumption or because the language of the statute is so vague that plaintiffs cannot ascertain which transactions give rise to their obligations to collect the sales tax.

## Equal Protection As-Applied Claim

Lastly, Amazon contends that the statute, as applied to it, violates the Equal Protection Clause because it is being treated differently from two similarly situated entities: out-of-state retailers who advertise in New York but do not use a mechanism similar to its Associates program, and those out-of-state retailers who do advertise in New York and who do utilize an Associates-like program, but who compensate their advertisers with a flat fee or on a "pay-per-click" model.

The Supreme Court has recognized that successful equal protection claims may be brought by a class of one "where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment" (*Village of Willowbrook v Olech*, 528 US 562, 564 [2000], citing *Sioux City Bridge Co. v Dakota County*, 260 US 441 [1923]). As the Supreme Court stated, " ' "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents" ' " (*Olech* at 564, quoting *Sioux City Bridge Co.*, 260 US at 445, quoting *Sunday Lake Iron Co. v Township of Wakefield*, 247 US 350, 352 [1918]).

"Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes" (*Regan v Taxation With Representation of Wash.*, 461 US 540, 547 [1983]). Consequently, the " 'presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes' " (*id.*, quoting *Madden v Kentucky*, 309 US 83, 88 [1940]).

 Our review concludes that Amazon has failed to establish the existence of a viable equal protection claim. In the first instance, Amazon cannot claim that it is being exclusively targeted since it is being treated exactly the same as Overstock. Their programs are similar, in that they both use in-state representatives and reward them on a "sales-made" basis, rather than on a "per-click" basis. Secondly, Amazon also fails in its claims that it is treated differently from those out-of-state retailers which do not have an Affiliates program like its own. Those retailers are not similarly situated. The first example offered by Amazon involves businesses which do not directly solicit, but only advertise in media, and the second involves representatives who are paid for results that are much less beneficial to the out-of-state vendor—referrals rather than actual sales. When a representative can only receive compensation for an actual sale, it is much more likely that the representative will actually solicit rather than passively maintain a Web site. Thus, there is no proof of impermissible motive—"proof of action with intent to injure—that is, proof that the applicant was singled out with an 'evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances' " (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 631 [2004], quoting *Masi Mgt. v Town of Ogden* [appeal No. 3], 273 AD2d 837, 838 [2000], quoting *Matter of 303 W. 42nd St.*

*Corp. v Klein*, 46 NY2d 686, 693 [1979], quoting *Yick Wo v Hopkins*, 118 US 356, 373-374 [1886]).

In summation, although we do not find that the facial challenges have merit, further discovery is necessary before a determination can be rendered as to the as-applied Commerce Clause and Due Process Clause claims.

Accordingly, the judgment of the Supreme Court, New York County (Eileen Bransten, J.), entered February 17, 2009, dismissing the complaint in this declaratory judgment action challenging the constitutionality of Tax Law § 1101 (b) (8) (vi) on Commerce Clause and federal and state due process and equal protection grounds, should be modified, on the law and on the facts, to declare that the statute is constitutional on its face and does not violate the Equal Protection Clause either on its face or as applied and to reinstate the complaint for further proceedings with regard to the claims that, as applied, the statute violates the Commerce and Due Process Clauses, and otherwise affirmed, with costs. The order of the same court and Justice, entered January 15, 2009, which, inter alia, directed entry of a judgment dismissing the complaint in the separate declaratory judgment action challenging the constitutionality of subparagraph (vi) on Commerce Clause and federal and state due process and equal protection grounds, should be modified, on the law and on the facts, to declare that the statute is constitutional on its face, and does not violate the Equal Protection Clause either on its face or as applied, and to reinstate the complaint for further proceedings with regard to the claims that, as applied, the statute violates the Commerce and Due Process Clauses, and otherwise affirmed, with costs.

CATTERSON, J. (concurring). While I believe that there may be a genuine issue of material fact sufficient to warrant a trial on the question of whether the tax in question violates the Commerce Clause as it is applied to the activities of the plaintiffs, I must nonetheless concur with the majority because on appeal, the plaintiffs have chosen to assert only a facial challenge to the statute's constitutionality under the Commerce Clause.

The majority maintains that, "[c]learly, Amazon's program, reasonably, is not designed for the passive advertiser, but seeks growth by reliance upon representatives who will look to solicit business." The majority concludes that the statute in question would be valid "when a New York representative uses some form of proactive solicitation which results in a sale by Amazon and a commission to the representative, and the representative

has an in-state presence sufficient to satisfy the substantial nexus test." Unfortunately, the record is insufficient to rebut the premise as a matter of law.

Thus, I agree with the majority that in order to prevail on a facial challenge to the constitutionality of the tax at issue, plaintiffs must overcome the strong "presumption of constitutionality accorded to legislative enactments by proof 'beyond a reasonable doubt.' " (*Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443, 448 [2003], quoting *LaValle v Hayden*, 98 NY2d 155, 161 [2002].) Furthermore, that plaintiffs bear the "substantial burden of demonstrating 'that "in any degree and in every conceivable application," the law suffers wholesale constitutional impairment.' " (*Moran Towing Corp.*, 99 NY2d at 448, quoting *Cohen v State of New York*, 94 NY2d 1, 8 [1999], quoting *McGowan v Burstein*, 71 NY2d 729, 733 [1988].) Had the challenge been based on the tax as applied to the plaintiffs' actual activities in New York, supported by a complete record of those activities as well as how the tax was apportioned, the plaintiffs may have had a valid challenge.

ANDRIAS, J.P., SWEENY and DEGRASSE, JJ., concur with NARDELLI, J.; CATTERSON, J., concurs in a separate opinion.

Judgment, Supreme Court, New York County, entered February 17, 2009, modified, on the law and on the facts, to declare that the statute is constitutional on its face and does not violate the Equal Protection Clause either on its face or as applied and to reinstate the complaint for further proceedings with regard to the claims that, as applied, the statute violates the Commerce and Due Process Clauses, and otherwise affirmed, with costs. Order, same court, entered January 15, 2009, modified, on the law and on the facts, to declare that the statute is constitutional on its face, and does not violate the Equal Protection Clause either on its face or as applied, and to reinstate the complaint for further proceedings with regard to the claims that, as applied, the statute violates the Commerce and Due Process Clauses, and otherwise affirmed, with costs.