OPINION OF THE COURT
Duane Hart, J.
A. Evidence on The Motion
The defendant Precision Airmotive Corporation (Precision) is a Washington State corporation with a principal place of business in that state. It is one of many companies under the umbrella of Precision Aerospace, which has 11 companies doing business in the United States, including New York.
Precision has approximately 40 employees, and a gross annual revenue of $12 million. It manufactures and sells fuel controls, including carburetors, for the general aviation piston aircraft market. In some cases, the customer sends the unit to Precision for overhauling, while in other cases, Precision manufactures or overhauls parts for wholesale distributors, warranty stations and overhaul shops, and sends the parts to the customer.
*552 This action arises out of the crash of a private plane at Farm-ingdale Airport on Long Island, on March 18, 2000. More than one year prior to the crash, in August 1998, Precision overhauled a batch of carburetors in the State of Washington. It received the batch from a Pennsylvania-based engine manufacturer, and returned the carburetors to that manufacturer. At some point, one of the carburetors from the batch was installed in the plane at issue.
With respect to New York, Precision is not licensed or authorized to do business, has no registered agent, pays no taxes, has no bank accounts, place of business or address, holds no real estate and has no officers, directors or employees in the state.
Precision does limited advertising in general trade magazines directed toward the aviation maintenance community. It also maintains a World Wide Web site which lists distributors of its products and warranty stations providing its parts and services throughout the United States and international community. One of the wholesale distributors listed on the Web site is located in upstate New York, where the customer also has an overhaul shop. In addition, Precision sells its products to warranty repair stations, one of which is located in Mattituck, Long Island.
From 1997 through 2001, the upstate New York customer purchased $250,626.67 of products from Precision.[1] During the same period, another customer located in New York but not listed on the Web site purchased a total of $2,627.65 of products from Precision. During the 1997-2001 period, Precision sold a total of $741,549 of products to the Long Island warranty station.[2] The documents in evidence also reveal that Precision ships directly to several other aviation service companies located in New York.
All shipments of Precision products are FOB “our dock,” meaning that the item belongs to the customer once it leaves Precision’s dock, and is shipped in accordance with the customer’s instructions.
*553 Thus, during the years 1997 through 2001, Precision sold a total of $994,803.60 of its products to New York State distributors or warranty repair shops in New York State. Precision estimates that this amounts to 2% of its total of $12 million in sales during the same period.[3]
B. Arguments on Motion
Based on this evidence, Precision moves to dismiss the complaint and all cross claims, contending that it is not subject to long-arm jurisdiction (see, CPLR 302 [a] [3] [ii]; 3211 [a] [8]). In sum, it claims that it could not have foreseen that its overhaul of a carburetor in Washington State, for a Pennsylvania-based engine manufacturer, would have had consequences in New York State.
In opposition, the plaintiffs contend that Precision is subject to personal jurisdiction pursuant to CPLR 302 (a) (3) (ii) as, from 1997-2001, it generated sales totaling $994,803.60 from the sale of 1,489 products in New York over a five-year period, its Web site attracts potential New York customers, it has distributors and warranty repair shops in New York, it advertises in trade journals, and it derives substantial revenue from interstate commerce.
In the alternative, the plaintiffs contend that Precision is subject to jurisdiction under CPLR 302 (a) (3) (i), as Precision regularly solicited and did business in New York, it derived substantial revenue from goods used in New York, it engaged in a persistent course of conduct in New York, and it was aware that its carburetors would be installed in planes which could fly anywhere in the world, including into and over New York. The plaintiffs also contend that discovery is not yet complete.
Precision replies that any outstanding discovery relates to subsidiaries of its parent company which are not involved in this litigation. It further contends that long-arm jurisdiction cannot be predicated solely on a stream of commerce theory or the solicitation of business and, in any event, the fact that its carburetors are installed in planes does not make it amenable to jurisdiction anywhere in the world.
C. Decision on Motion
1. Jurisdiction Under CPLR 302 (a) (3) (ii)
CPLR 302 (a) (3) (ii) provides, in pertinent part, that a defendant who commits a tortious act without the state causing *554 injury to a person or property within the state, will be subject to jurisdiction if the defendant: “(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce” (CPLR 302 [a] [3] [ii]).
In this case, the sole disputed element is whether Precision expected or should reasonably have had reason to expect that its tortious act (overhauling the carburetor) committed in another state (Washington), would have direct consequences in this state (see, LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 214), when in fact, the carburetor came from and was returned to Pennsylvania.[4]
It has been noted that a defendant need not foresee the specific event that produced the alleged injury; instead, the defendant need only reasonably foresee that any defect in its product would have direct consequences within the state (see, LaMarca, supra at 215). In other words, the “foreseeability requirement” relates to forum consequences generally, and not to the specific event which produced the injury within the state (see, Roberts-Gordon, LLC v Superior Radiant Prods., Ltd., 85 F Supp 2d 202, 216).
Precision contends that it could not foresee that its overhaul of carburetors in Washington for a Pennsylvania engine manufacturer would have any consequence in New York, as it did not know that the carburetor would end up in New York. This argument, however, appears to be too narrow, in that it fails to account for the nature of Precision’s business, to manufacture and sell parts worldwide for plane engines, and Precision’s own affiliation with the New York market through its direct and indirect sales to New York businesses (see, e.g., Crair v Saxena, 277 AD2d 275; see, also, Kernan v Kurz-Hastings, Inc., 175 F3d 236, 242).
Thus, a nondomiciliary may be subject to suit if “the sale of one of its products arises from the efforts of the manufacturer or distributor to serve directly the market for its product in other countries or States, and its allegedly defective merchan *555 dise has been a source of injury” (see, Drexler v Highlift, Inc., 296 AD2d 434, 435, quoting Napolitano v Mastic Bicycles & Fitness Co., 279 AD2d 461, 462).
The evidence in this case warrants a finding that Precision’s intended distribution activities made it foreseeable that its products would be found in New York, and that its alleged negligent overhaul and manufacture of carburetors in Washington, and sales to other states as well as New York, could have direct and expected consequences in New York (see, Drexler v Highlift, supra', Napolitano v Mastic Bicycles & Fitness Co., supra', Crair v Saxena, supra; see, also, Roberts-Gordon, LLC v Superior Radiant Prods., Ltd., supra).[5]
Precision’s continuous sales of products in this state make it reasonable to subject it to suit in this state, which differentiates its position from that of a manufacturer whose product was merely “swept” into this state by the stream of commerce (cf., Asahi Metal Indus. Co., Ltd. v Superior Ct. of Cal., Solano County, 480 US 102, 110-113).
Accordingly, the exercise of jurisdiction is proper under CPLR 302 (a) (3) (ii).
2. Jurisdiction Under CPLR 302 (a) (3) (i)
In the alternative, the exercise of jurisdiction is appropriate under CPLR 302 (a) (3) (i). That section provides that a court may exercise personal jurisdiction over any nondomiciliary which commits a tortious act without the state causing injury to a person or property within the state, where the person: “(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state * * * ” (CPLR 302 [a] [3] [i]).
Although the clause does not require the quantity of contacts necessary to meet the “doing business” test for jurisdiction under CPLR 301, it does require something more than the “one shot” single business transaction described under CPLR 302 (a) (1) (see, Ingraham v Carroll, 90 NY2d at 597; Roberts-Gordon, LLC v Superior Radiant Prods., Ltd., 85 F Supp 2d at 215).
*556 Clearly, Precision does not maintain any business or aegis of a business in New York. As noted, however, Precision has sold thousands of its products to New York State businesses, and has received approximately $1 million of its $12 million income from New York during the relevant years.
In light of the number of sales in New York, Precision does business here within the meaning of the clause, and it derives a substantial portion of its revenue in New York from goods used or consumed here. Accordingly, Precision has sufficient contacts with the state to support the exercise of jurisdiction under this section of CPLR 302 (a) (3) (i) (see, Allen v Canadian Gen. Elec. Co., 65 AD2d 39, affd 50 NY2d 935; cf., Ingra-ham v Carroll, supra; Martinez v American Std., 60 NY2d 873; Schriver v TAP Enters., Inc., 2001 US Dist LEXIS 2436, *1, 5-6).
Accordingly, and in the alternative, the exercise of jurisdiction is appropriate under CPLR 302 (a) (3) (i).
3. Due Process, Minimum Contacts, Fair Play and Substantial Justice Considerations
Finally, the assertion of jurisdiction under CPLR 302 (a) (3) is proper under federal due process standards of minimum contacts and fair play and substantial justice (see, LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 214-219; World-Wide Volkswagen Corp. v Woodson, 444 US 286; Kernan v Kurz-Hastings, Inc., 175 F3d at 242-245; Roherts-Gordon, LLC v Superior Radiant Prods., Ltd., 85 F Supp 2d at 217-219). Here, although Precision is located in Washington, any inconvenience arising from defending itself in this state is outweighed by its efforts to forge ties with New York, resulting in numerous sales of its products here. As a result of this purposeful action, Precision had every reason to foresee that there could be the prospect of being haled into court here if its defective products caused injury (see, LaMarca v Pak-Mor Mfg. Co., supra at 217-218).
With respect to traditional notions of fair play and substantial justice, this court must consider the burden on the defendant, the interests of the forum state and the plaintiffs interests in obtaining relief (see, LaMarca, supra at 218, quoting Asahi Metal Indus. Co. v Superior Ct. of Cal., 480 US at 113, quoting World-Wide Volkswagen Corp. v Woodson, 444 US at 292). The court must also weigh in its determination the interstate judicial system’s interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies (LaMarca, supra).
*557 The burden on Precision is not great, as it is a United States corporation fully familiar with the country’s legal system, and it took advantage of the New York market for its products. New York has a strong interest in providing a forum for the plaintiffs, as the injuries occurred here as a result of the allegedly defective carburetor, and the New York plaintiffs have a strong interest in bringing Precision into a New York court. Furthermore, both the accident and investigation into the accident occurred in New York.
No substantive social policies have been identified which would be furthered or undermined by permitting the case to proceed in New York; however, considering that Precision’s long business arm extended to New York, it seems only fair to extend correspondingly the reach of New York’s jurisdictional long arm (see, LaMarca, supra; Kernan v Kurz-Hastings, Inc., 175 F3d 236, 242-245).
Accordingly, the exercise of personal jurisdiction over Precision pursuant to CPLR 302 (a) (3) (i) and (ii) comports with due process requirements.
In view of the court’s determination, the plaintiffs’ remaining contention relating to discovery need not be addressed.

. Specifically, in 1997, the upstate New York customer purchased $70,850.83 of products; in 1998, it purchased $31,738.54; in 1999, it purchased $52,366.95; in 2000, it purchased $32,234.45; and in 2001, it purchased $63,435.90.

. In 1997, the Long Island warranty station purchased $165,389.32 of products from Precision; in 1998, it purchased $187,319.97; in 1999, it purchased $147,257.69; in 2000, it purchased $108,622.48; and in 2001, it purchased $132,959.82.

. It is unclear whether this amount includes sales to other aviation services in New York, as the large computer listing indicating sales to such • companies does not appear to total the amount of those sales.

. In its motion papers, Precision concedes that it derives substantial revenue from interstate commerce. The CPLR 302 (a) (3) (ii) element that the defendant derive substantial revenue from interstate or international commerce is designed to narrow “ ‘the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but “whose business operations are of a local character” ’ ” (LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 215, supra, quoting Ingraham v Carroll, 90 NY2d 592, 599).

. In addition, as Precision concedes, the evidence clearly reveals that Precision’s business was not local, as it engaged in and derived substantial revenue from interstate commerce, and derived a substantial part of that income through its New York sales (see, LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 216-218; cf., Andrew Greenberg, Inc. v Sir-Tech Software, 297 AD2d 834).