[987 NE2d 621, 965 NYS2d 61]

OVERSTOCK.COM, INC., Appellant, v NEW YORK STATE DEPART-
MENT OF TAXATION AND FINANCE et al., Respondents.

AMAZON.COM, LLC, et al., Appellants, v NEW YORK STATE DEPART-
MENT OF TAXATION AND FINANCE et al., Respondents.

Argued February 6, 2013; decided March 28, 2013

588

**POINTS OF COUNSEL**

*Bracewell & Giuliani LLP*, New York City (*Daniel S. Connolly* and *Rachel B. Goldman* of counsel), for appellant in the first above-entitled action. I. New York's Internet tax is facially invalid under the Commerce Clause. (*Quill Corp. v North Dakota*, 504 US 298; *Healy v Beer Institute*, 491 US 324; *General Motors Corp. v Tracy*, 519 US 278; *Northwestern States Portland Cement Co. v Minnesota*, 358 US 450; *Dutchess Sanitation Serv. v Town of Plattekill*, 51 NY2d 670; *Wardair Canada Inc. v Florida Dept. of Revenue*, 477 US 1; *Hughes v Oklahoma*, 441 US 322; *National Bellas Hess, Inc. v Department of Revenue of Ill.*, 386 US 753; *Oklahoma Tax Comm'n v Jefferson Lines, Inc.*, 514 US 175; *Complete Auto Transit, Inc. v Brady*, 430 US 274.) II. The Internet tax violates due process. (*People v Leyva*, 38 NY2d 160; *Speiser v Randall*, 357 US 513; *Bailey v Alabama*, 219 US

219; *Vlandis v Kline*, 412 US 441; *Central Sav. Bank v City of New York*, 280 NY 9; *Usery v Turner Elkhorn Mining Co.*, 428 US 1; *Heiner v Donnan*, 285 US 312; *Eff-Ess, Inc. v New York Edison Co.*, 237 App Div 315; *County Court of Ulster Cty. v Allen*, 442 US 140.)

*Gibson, Dunn & Crutcher LLP*, New York City (*Randy M. Mastro* and *Oliver M. Olanoff* of counsel), and *Gibson, Dunn & Crutcher LLP* (*Julian W. Poon*, of the California bar, admitted pro hac vice, and *Kahn A. Scolnick*, of the California bar, admitted pro hac vice, of counsel) for appellants in the second above-entitled action. I. Tax Law § 1101 (b) (8) (vi) violates due process on its face. (*Complete Auto Transit, Inc. v Brady*, 430 US 274; *Quill Corp. v North Dakota*, 504 US 298; *Scripto, Inc. v Carson*, 362 US 207; *Tyler Pipe Industries, Inc. v Washington State Dept. of Revenue*, 483 US 232; *National Bellas Hess, Inc. v Department of Revenue of Ill.*, 386 US 753; *Miller Brothers Co. v Maryland*, 347 US 340; *Speiser v Randall*, 357 US 513, *Bailey v Alabama*, 219 US 219; *United States v Romano*, 382 US 136; *Tot v United States*, 319 US 463.) II. Tax Law § 1101 (b) (8) (vi) violates the Commerce Clause on its face. (*Quill Corp. v North Dakota*, 504 US 298; *Scripto, Inc. v Carson*, 362 US 207; *Tyler Pipe Industries, Inc. v Washington State Dept. of Revenue*, 483 US 232; *Miller Brothers Co. v Maryland*, 347 US 340; *National Bellas Hess, Inc. v Department of Revenue of Ill.*, 386 US 753; *St. Tammany Parish Tax Collector v Barnesandnoble.Com*, 481 F Supp 2d 575; *Matter of Orvis Co. v Tax Appeals Trib. of State of N.Y.*, 86 NY2d 165; *General Trading Co. v State Tax Comm'n of Iowa*, 322 US 335; *Felt & Tarrant Mfg. Co. v Gallagher*, 306 US 62; *American Libs. Assn. v Pataki*, 969 F Supp 160.) III. The Appellate Division, First Department, applied the wrong legal standard to decide Amazon.com, LLC's and Amazon Services LLC's facial constitutional claims. (*United States v Salerno*, 481 US 739; *Doe v City of Albuquerque*, 667 F3d 1111; *Washington State Grange v Washington State Republican Party*, 552 US 442; *Chicago v Morales*, 527 US 41; *Washington v Glucksberg*, 521 US 702; *County Court of Ulster Cty. v Allen*, 442 US 140; *Leary v United States*, 395 US 6.) IV. Even under the "no set of circumstances" test, Tax Law § 1101 (b) (8) (vi) would still be unconstitutional on its face. (*Roe v Meese*, 689 F Supp 344; *United States v Arizona*, 295 US 174; *Speiser v Randall*, 357 US 513; *Washington State Grange v Washington State Republican Party*, 552 US 442.)

*Eric T. Schneiderman, Attorney General*, New York City (*Steven C. Wu, Barbara D. Underwood* and *Andrew D. Bing* of

counsel), for respondents in the first and second above-entitled actions. I. Facial invalidation requires proof that a statute is indisputably unconstitutional regardless of individual factual circumstances. (*People v Stuart*, 100 NY2d 412; *Cohen v Cuomo*, 19 NY3d 196; *Paterson v University of State of N.Y.*, 14 NY2d 432; *Cohen v State of New York*, 94 NY2d 1; *United States v Salerno*, 481 US 739; *Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443; *Washington State Grange v Washington State Republican Party*, 552 US 442; *Matter of McGee v Korman*, 70 NY2d 225; *Sabri v United States*, 541 US 600; *Department of Taxation & Finance of N. Y. v Milhelm Attea & Bros.*, 512 US 61.) II. Tax Law § 1101 (b) (8) (vi) complies with the dormant Commerce Clause. (*Matter of Zelinsky v Tax Appeals Trib. of State of N.Y.*, 1 NY3d 85; *Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443; *Matter of Orvis Co. v Tax Appeals Trib. of State of N.Y.*, 86 NY2d 165; *Quill Corp. v North Dakota*, 504 US 298; *Scripto, Inc. v Carson*, 362 US 207; *National Geographic Soc. v California Bd. of Equalization*, 430 US 551; *Standard Pressed Steel Co. v Department of Revenue of Wash.*, 419 US 560; *Felt & Tarrant Mfg. Co. v Gallagher*, 306 US 62; *Tyler Pipe Industries, Inc. v Washington State Dept. of Revenue*, 483 US 232; *Complete Auto Transit, Inc. v Brady*, 430 US 274.) III. Tax Law § 1101 (b) (8) (vi)'s presumption of solicitation satisfies the Due Process Clause. (*Mobile, J. & K. C. R. Co. v Turnipseed*, 219 US 35; *Matter of Casse v New York State Racing & Wagering Bd.*, 70 NY2d 589; *Usery v Turner Elkhorn Mining Co.*, 428 US 1; *United States v Gainey*, 380 US 63; *County Court of Ulster Cty. v Allen*, 442 US 140; *Lavine v Milne*, 424 US 577; *Trump v Chu*, 65 NY2d 20; *Matter of Grace v New York State Tax Commn.*, 37 NY2d 193; *Matter of 31/32 Lexington Assoc. v Tax Appeals Trib. of State of N.Y.*, 258 AD2d 684; *Matter of Orvis Co. v Tax Appeals Trib. of State of N.Y.*, 86 NY2d 165.)

**OPINION OF THE COURT**

Chief Judge Lippman.

Plaintiffs challenge Tax Law § 1101 (b) (8) (vi) (the Internet tax), alleging that it is unconstitutional on its face because it violates the Commerce Clause by subjecting online retailers, without a physical presence in the state, to New York sales and compensating use taxes. They also maintain that the Internet tax violates the Due Process Clause by creating an irrational, irrebuttable presumption of solicitation of business within the state. We reject plaintiffs' facial challenges.

I.

Plaintiff Amazon.com, LLC is a limited liability company formed in Delaware; Amazon Services LLC is a limited liability company formed in Nevada (collectively Amazon). Its principal corporate offices are located in the State of Washington. Amazon is strictly an online retailer—selling its merchandise solely through the Internet—and represents that it does not maintain any offices or property in New York.

Amazon offers an "Associates Program" through which third parties agree to place links on their own websites that, when clicked, direct users to Amazon's website. The Associates are compensated on a commission basis. They receive a percentage of the revenue from sales generated when a customer clicks on the Associate's link and completes a purchase from the Amazon site. The operating agreement governing this arrangement states that the Associates are independent contractors and that there is no employment relationship between the parties. Thousands of entities enrolled in the Associates Program have provided a New York address in connection with their applications.

Plaintiff Overstock.com is a Delaware corporation with its principal place of business in Utah. Overstock likewise sells its merchandise solely through the Internet and does not maintain any office, employees or property in New York. Similar to Amazon, Overstock had an "Affiliates" program through which third parties would place links for Overstock.com on their own websites.[1] When a customer clicked on the link, he or she was immediately directed to Overstock.com, and if the customer completed a purchase, the Affiliate received a commission. According to the parties' Master Agreement, the Affiliates were independent contractors without the authority to obligate or bind Overstock.

In April 2008, the legislature amended the Tax Law to include the subparagraph at issue here. In connection with the statutory definition of "vendor," the Internet tax provides that

> "a person making sales of tangible personal property or services taxable under this article ('seller') shall be presumed to be soliciting business through an independent contractor or other representative if

---

**1.** Overstock suspended its Affiliates program (for those who provided a New York address) shortly after the enactment of the Internet tax at issue here.

the seller enters into an agreement with a resident of this state under which the resident, for a commission or other consideration, directly or indirectly refers potential customers, whether by a link on an internet website or otherwise, to the seller, if the cumulative gross receipts from sales by the seller to customers in the state who are referred to the seller by all residents with this type of an agreement with the seller is in excess of ten thousand dollars during the preceding four quarterly periods" (Tax Law § 1101 [b] [8] [vi]).

The statutory presumption, however, can "be rebutted by proof that the resident with whom the seller has an agreement did not engage in any solicitation in the state on behalf of the seller that would satisfy the nexus requirement of the United States constitution during the four quarterly periods in question" (Tax Law § 1101 [b] [8] [vi]).

Shortly after the legislation was enacted, the Department of Taxation and Finance (DTF) issued a memorandum to provide taxpayer guidance on the recent amendment. The document clarified that advertising alone would not invoke the statutory presumption, but further observed that, for purposes of this statute, the placement of a link to the seller's website where the resident was compensated on the basis of completed sales deriving from that link would not be considered mere advertising (*see* NY St Dept of Taxation & Fin Mem No. TSB-M-08[3]S). The memorandum also explained that the statutory presumption could be rebutted through proof that the residents' only activity in New York on behalf of the seller was to provide a link to the seller's website and that the residents did not engage in any in-state solicitation directed toward potential New York customers (*see* NY St Dept of Taxation & Fin Mem No. TSB-M-08[3]S).

The following month, DTF issued a second memorandum, further detailing how sellers could rebut the statutory presumption. The presumption would be deemed successfully rebutted if the seller satisfied two conditions: (1) if the parties' contract prohibited the resident representative from engaging in any solicitation activities in New York State on behalf of the seller, and (2) if each resident representative submitted an annual, signed certification stating that the resident had not engaged in any of the proscribed solicitation (*see* NY St Dept of Taxation & Fin Mem No. TSB-M-08[3.1]S).

Amazon commenced this action on April 25, 2008, seeking a judgment declaring that the statute was unconstitutional both on its face and as applied. Overstock commenced its action on May 30, 2008, making essentially the same arguments and also seeking injunctive relief. Supreme Court, in separate decisions, granted DTF's motions to dismiss the complaints for failure to state a cause of action and denied plaintiffs' cross motions for summary judgment as moot, rejecting all of plaintiffs' challenges to the constitutionality of the statute (*see Amazon.com LLC v New York State Dept. of Taxation & Fin.*, 23 Misc 3d 418 [Sup Ct, NY County 2009]).

The Appellate Division affirmed the portions of the orders that dismissed the facial challenges under the Commerce and Due Process Clauses and declared the statute constitutional on its face (81 AD3d 183 [1st Dept 2010]). However, the Court modified by reinstating the as-applied challenges, finding that further discovery was required before those claims could be determined. Plaintiffs then entered into stipulations of discontinuance withdrawing their as-applied constitutional challenges with prejudice, which were deemed the final judgments. They now appeal pursuant to CPLR 5601 (b) (1) and (d), bringing up for review the prior nonfinal Appellate Division order.

## II.

Having elected to forgo their as-applied challenges, plaintiffs now confront the substantial hurdle of demonstrating that the Internet tax is unconstitutional on its face. It is well settled that facial constitutional challenges are disfavored. "Legislative enactments enjoy a strong presumption of constitutionality . . . [and] parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity 'beyond a reasonable doubt.' Moreover, courts must avoid, if possible, interpreting a presumptively valid statute in a way that will needlessly render it unconstitutional" (*LaValle v Hayden*, 98 NY2d 155, 161 [2002] [citations omitted]).

There is some dispute as to the appropriate standard for evaluating a facial challenge under the Commerce Clause— whether we must determine that there is "no set of circumstances" under which the statute would be valid (*see Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443, 448 [2003], quoting *United States v Salerno*, 481 US 739, 745 [1987]) or apply the stricter test of whether "the statute has a plainly legitimate sweep" (*see Washington State Grange v Washington State*

*Republican Party*, 552 US 442, 449 [2008] [internal quotation marks and citation omitted]; *Crawford v Marion County Election Bd.*, 553 US 181, 202 [2008]). Under either standard, however, the Internet tax is constitutional on its face.

The dormant Commerce Clause has been interpreted to prohibit states from imposing an undue tax burden on interstate commerce (*see Matter of Orvis Co. v Tax Appeals Trib. of State of N.Y.*, 86 NY2d 165, 170-171 [1995]). However, in the absence of an improper burden, entities participating in interstate commerce will not be excused from the obligation to pay their fair share of state taxes (*see Orvis*, 86 NY2d at 171). To that end, a state tax impacting the Commerce Clause will be upheld " '[1] when the tax is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State' " (*Moran Towing*, 99 NY2d at 449, quoting *Complete Auto Transit, Inc. v Brady*, 430 US 274, 279 [1977]). The parties agree that the only prong at issue here is whether the statute satisfies the "substantial nexus" test.

In *National Bellas Hess, Inc. v Department of Revenue of Ill.* (386 US 753 [1967]), the United States Supreme Court held that a use tax could not be imposed on an out-of-state mail-order business that did not have offices, property or sales representatives in Illinois. The Court noted that it had never permitted such a tax where the seller's sole connection with its customers in the forum state was by mail or common carrier (*see Bellas Hess*, 386 US at 758). Rather, the Court observed that, if Illinois were permitted to impose that type of tax burden, every other taxing jurisdiction in the country could do the same, which would result in a morass of obligations to local governments (*see Bellas Hess*, 386 US at 759-760).

The Supreme Court confronted a similar issue involving a mail-order business in *Quill Corp. v North Dakota* (504 US 298, 314 [1992]) and considered whether the emphasis in *Bellas Hess* on physical presence within the state had been rendered obsolete by the Court's shift toward "more flexible balancing analyses" under the Commerce Clause. While allowing that the result might have been different if the issue was being considered for the first time, the Court retained the bright-line presence requirement articulated in *Bellas Hess*, recognizing the benefits provided by a clear rule that established the limits of state taxing authority (*see Quill*, 504 US at 311, 315).

The world has changed dramatically in the last two decades, and it may be that the physical presence test is outdated. An entity may now have a profound impact upon a foreign jurisdiction solely through its virtual projection via the Internet. That question, however, would be for the United States Supreme Court to consider. We are bound, and adjudicate this controversy, under the binding precedents of that Court, the ultimate arbiter of the meaning of the Commerce Clause.

Subsequent to *Quill*, we further explained that, although an in-state physical presence is necessary, it "need not be substantial. Rather, it must be demonstrably more than a 'slightest presence' " (*Orvis*, 86 NY2d at 178, quoting *National Geographic Soc. v California Bd. of Equalization*, 430 US 551, 556 [1977]). The presence requirement will be satisfied if economic activities are performed in New York by the seller's employees or on its behalf (*see Orvis*, 86 NY2d at 178).

There are clearly parallels between a mail-order business and an online retailer—both are able to conduct their operations without maintaining a physical presence in a particular state. Indeed, physical presence is not typically associated with the Internet in that many websites are designed to reach a national or even a global audience from a single server whose location is of minimal import. However, through this statute, the legislature has attached significance to the physical presence of a resident website owner. The decision to do so recognizes that, even in the Internet world, many websites are geared toward predominantly local audiences—including, for instance, radio stations, religious institutions and schools—such that the physical presence of the website owner becomes relevant to Commerce Clause analysis. Indeed, the Appellate Division record in this case contains examples of such websites urging their local constituents to support them by making purchases through their Amazon links. Essentially, through these types of affiliation agreements, a vendor is deemed to have established an in-state sales force.

Viewed in this manner the statute plainly satisfies the substantial nexus requirement. Active, in-state solicitation that produces a significant amount of revenue qualifies as "demonstrably more than a 'slightest presence' " under *Orvis*. Although it is not a dispositive factor, it also merits notice that vendors are not required to pay these taxes out-of-pocket. Rather, they are collecting taxes that are unquestionably due, which are exceedingly difficult to collect from the individual purchasers themselves, and as to which there is no risk of multiple taxation.

Clearly, the statutory language allows for a range of possible types of compensation ("commission or other consideration"), which would include flat fee arrangements. However, no one disputes that a substantial nexus would be lacking if New York residents were merely engaged to post passive advertisements on their websites. The bottom line is that if a vendor is paying New York residents to actively solicit business in this state, there is no reason why that vendor should not shoulder the appropriate tax burden. We will not strain to invalidate this statute where plaintiffs have not met their burden of establishing that it is facially invalid.

## III.

As explained in *Quill*, although Due Process and Commerce Clause challenges are "closely related," each provision "pose[s] distinct limits on the taxing powers of the States" (504 US at 305). Unlike the bright line presented by the Commerce Clause, physical presence is not required in order to satisfy due process. Instead, the focus is on whether a party has purposefully directed its activities toward the forum state and whether it is reasonable, based on the extent of a party's contacts with that state and the benefits derived from such access, to require it to collect taxes for that state (*see Quill*, 504 US at 307-308). Indeed, an entity "that is engaged in continuous and widespread solicitation of business within a State . . . clearly has fair warning that [its] activity may subject [it] to the jurisdiction of a foreign sovereign," even in the absence of physical presence (*Quill*, 504 US at 308 [internal quotation marks and citation omitted]). In this respect, we believe that a brigade of affiliated websites compensated by commission is the equivalent of "a deluge of catalogs" and "a phalanx of drummers" (*Quill*, 504 US at 308).

Plaintiffs argue that the Internet tax violates due process because the statutory presumption is irrational and essentially irrebuttable. In order for the presumption to be constitutionally valid, there must be "a rational connection between the facts proven and the fact presumed, and . . . a fair opportunity for the opposing party to make [a] defense" (*Matter of Casse v New York State Racing & Wagering Bd.*, 70 NY2d 589, 595 [1987]).

Here, the fact proved is that the resident is compensated for referrals that result in purchases. The fact presumed is that at least some of those residents will actively solicit other New Yorkers in order to increase their referrals and, consequently,

their compensation.[2] It is plainly rational to presume that, given the direct correlation between referrals and compensation, it is likely that residents will seek to increase their referrals by soliciting customers. More specifically, it is not unreasonable to presume that affiliated website owners residing in New York State will reach out to their New York friends, relatives and other local individuals in order to accomplish this purpose. As noted above, the record contains examples of this type of solicitation by schools and certain other organizations.

The presumption would appear decidedly less rational if it were applied to those who receive some types of "other consideration"—i.e., those whose compensation is unrelated to actual sales. It is difficult to distinguish that arrangement from traditional advertising. Nonetheless, plaintiffs have chosen to limit our review to a facial challenge, and the fact that plaintiffs can posit a potential constitutional infirmity does not require the statute's invalidation on its face. This is particularly true where, as here, the agency charged with enforcing the statute has expressly acknowledged that mere advertising is beyond the scope of the provision.

Plaintiffs also claim that the presumption is irrebuttable because it will be extremely difficult, if not impossible, to prove that none of their New York affiliates is soliciting customers on the retailers' behalf. However, as noted above, DTF has set forth a method (contractual prohibition and annual certification) through which the retailers will be deemed to have rebutted the presumption. Obtaining the necessary information may impose a burden on the retailers, but inconvenience does not render the presumption irrebuttable. In addition, while not determinative, it is notable that the presumption sensibly places the burden on the retailers to provide information about the activities of their own affiliates—information that DTF would have significant difficulty uncovering on its own (see Lavine v Milne, 424 US 577, 585 [1976]).

In sum, plaintiffs have failed to demonstrate that the statute is facially unconstitutional under either the Commerce or the Due Process Clause.

Accordingly, in both cases, the judgment appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.

---

**2.** The presumption only applies in the first instance to a company that has sold at least $10,000 in products or services as the result of such referrals.

SMITH, J. (dissenting). The rules that govern this case are laid down in a series of United States Supreme Court decisions and are not in dispute. Under the Commerce Clause, a state may require an out-of-state retailer to collect use tax from in-state purchasers only if the retailer has a physical presence within the state (*National Bellas Hess, Inc. v Department of Revenue of Ill.*, 386 US 753 [1967]; *Quill Corp. v North Dakota*, 504 US 298, 309-319 [1992]). The solicitation of customers for the retailer by in-state sales representatives counts as a physical presence, even where the sales representatives are independent contractors (*Scripto, Inc. v Carson*, 362 US 207 [1960]; *Tyler Pipe Industries, Inc. v Washington State Dept. of Revenue*, 483 US 232, 250-251 [1987]; cf. *Matter of Orvis Co. v Tax Appeals Trib. of State of N.Y.*, 86 NY2d 165, 180 [1995]); but mere advertising by the out-of-state retailer in in-state media does not (*see Quill*, 504 US at 302-303 [North Dakota statute making tax obligation dependent on advertisements held invalid]). Thus, the majority correctly summarizes the law by saying that "if New York residents were merely engaged to post passive advertisements on their websites" no tax could be collected, but that a vendor who "is paying New York residents to actively solicit business in this state" may be required to remit tax (majority op at 596).

Our task here is to decide whether certain New York-based websites—Overstock's "Affiliates" and Amazon's "Associates"—are the equivalent of sales agents, soliciting business for Overstock and Amazon, or are only media in which Overstock and Amazon advertise their products. I think they are the latter.

The Overstock and Amazon links that appear on websites owned by New York proprietors serve essentially the same function as advertising that a more traditional out-of-state retailer might place in local newspapers. The websites are not soliciting customers for Overstock and Amazon in the fashion of a local sales agent. Of course the website owners solicit business for themselves; they encourage people to visit their websites, just as a newspaper owner would seek to boost circulation. But there is no basis for inferring that they are actively soliciting for the out-of-state retailers.

It does not make sense to envision a website owner trying to persuade members of the public, as a sales agent would, that Overstock and Amazon are high quality merchants that the public should want to do business with: persuasion of that sort

does the website owner no good. A traditional sales agent—say, a vacuum cleaner salesman—would promote a particular brand of vacuum cleaner so that customers would order the product through him and he would get a commission. But no website owner promotes Overstock or Amazon for a similar reason, because everyone who wants to buy from either of those firms can go to the retailer's website directly. It is true, as the majority mentions (majority op at 595), that certain kinds of website owners—churches and schools, for example—may ask their supporters to show their loyalty by using the website when they buy from Amazon, but that is not the same as soliciting business that Amazon would not otherwise get. In any event, a rule applicable to websites generally cannot be justified on the basis of the special characteristics of volunteer-supported organizations.

The statute at issue here tries to turn advertising media into an in-state sales force through a presumption. The statute says that a seller "shall be presumed to be soliciting business through an independent contractor or other representative" if it enters an agreement under which a New York resident "for a commission or other consideration, directly or indirectly refers potential customers, whether by a link on an internet website or otherwise" (Tax Law § 1101 [b] [8] [vi]). But of course a statutory presumption cannot by itself permit a state to do what the United States Constitution forbids. To presume that every website that has an agreement under which it carries an Overstock or Amazon link is a sales agent for Overstock or Amazon would be to nullify the rule that advertising in in-state media is not the equivalent of physical presence.

Read literally, the statute would reach essentially all Internet advertising that links to a seller's website: it includes any agreement for referral of customers, by a link or otherwise, "for a commission or other consideration." Since this literal reading would unquestionably render the statute unconstitutional, the Department of Taxation and Finance has adopted a narrowing construction, largely ignoring the words "or other consideration," and applying the presumption only where the website receives a commission or similar compensation—i.e., where "the consideration for placing the link on the Web site is based on the volume of completed sales generated by the link" (NY St Dept of Taxation & Fin Mem No. TSB-M-08[3]S at 2). The narrowing construction, in my view, does not save the statute.

It was no doubt true before the Internet existed that advertising was usually sold for a flat fee, while sales agents usually

worked on commission, but that has changed. When an advertisement takes the form of a link on a website, it is easy, as well as efficient, for the advertiser to compensate the website on the basis of results. But the link is still only an ad. It seems quite unlikely, and the record contains no evidence, that compensation "based on the volume of completed sales" is an unusual way of charging for web advertising, or that such compensation is primarily associated with active solicitation on the seller's behalf by the website owner.

A number of tests have been stated for deciding the validity of a statutory presumption. In *People v Leyva* (38 NY2d 160, 165-166 [1975]), we described certain United States Supreme Court cases as requiring "a rational connection between the facts which are proved and the one which is to be inferred with the aid of the presumption" (*see Tot v United States*, 319 US 463, 467-468 [1943]; *United States v Romano*, 382 US 136, 139-141 [1965]), and others as requiring a "substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend" (*Leary v United States*, 395 US 6, 36 [1969]). New York, according to the *Leyva* case, "has exacted an even higher standard of rational connection," one that "must assure 'a reasonably high degree of probability' that the presumed fact follows from those proved directly" (38 NY2d at 166, quoting *People v McCaleb*, 25 NY2d 394, 404 [1969]).

I do not think it necessary to decide here what test should apply to a presumption enacted by a state for the purpose of expanding its own power over interstate transactions (though I would think it should be a relatively demanding one); whatever the test is, this statute fails. To infer, from an agreement to put a link on a website and to compensate the website owner in proportion to the resulting sales, that the website owner is actively soliciting business for the seller "is so strained as not to have a reasonable relation to the circumstances of life as we know them" (*Tot v United States*, 319 US at 468).

I would therefore hold that the statute challenged in this litigation is invalid under the Commerce Clause.

Judges GRAFFEO, READ and PIGOTT concur with Chief Judge LIPPMAN; Judge SMITH dissents in an opinion; Judge RIVERA taking no part.

In each case: Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.