FEINMAN, J. (concurring).
Defendant Charles Brown, a local Ohio firearms retailer, "did not maintain a website [in New York], had no retail store or business telephone listing [in New York], and did no advertising of any kind" in New York (majority op. at 527, 106 N.Y.S.3d at 237, 130 N.E.3d at 838 [DiFiore, Ch. J.] ). The only tenuous connection Brown had to this State was the sale of firearms in Ohio to another Ohio resident who indicated that there was "a chance ... at some undefined point in the future" that those firearms might be "transport[ed] ... to New York" (id. at 530, 106 N.Y.S.3d at 242, 130 N.E.3d at 838). I agree with our colleagues (see id. at 526-27, 106 N.Y.S.3d at 239, 130 N.E.3d at 835) and the Appellate Division that exercising personal jurisdiction over defendant Charles Brown, an Ohio resident, would violate his federal due process rights. I write separately to express that in my view, Brown's "connection" with this State, to the extent it could be characterized as a connection at all, is insufficient to establish personal jurisdiction in the first instance under our State's long-arm statute (see generally McGowan v. Smith, 52 N.Y.2d 268, 274, 437 N.Y.S.2d 643, 419 N.E.2d 321 [1981] ).
***532 I.
Defendant Beemiller, Inc. ("Beemiller"), an Ohio corporation, manufactures 9 mm pistols. Those pistols are sold under the "Hi-Point" brand through an exclusive distributor, defendant MKS Supply, Inc. ("MKS"), another Ohio corporation. Brown, a federal firearms licensee, purchased some of these Hi-Point pistols from MKS Supply and re-sold them in Ohio through his company Great Lakes Products ("GLP"). From May to October 2000, **243 *839 at various gun shows in Ohio, Brown sold 182 handguns to Bostic and his two associates, all Ohio residents. During this time, Bostic told Brown that he and his associates were buying the firearms because they were "planning on possibly opening up a couple gun shops in the future, possibly two, one in Columbus, Ohio, one in Buffalo[, New York]" (emphases supplied). Instead, following each Ohio purchase, Bostic would take possession of the firearms, drive the firearms across state lines to Buffalo, New York, and store them at his relatives' homes until he could sell the firearms directly to buyers or hand off the guns to third-parties for resale.
In August 2003, plaintiff Daniel Williams was shot in Buffalo, New York with one of the guns sold by Brown to Bostic and his associates. Two months after that shooting, Bostic pled guilty to illegally trafficking and sale of weapons in New York. This lawsuit, brought by Williams and his father, followed in July 2005.
Plaintiffs seek to hold defendants Beemiller, MKS, and Brown, among others, liable for the negligent sale and distribution of the firearm used in the shooting. The sole issue on this appeal is whether New York can exercise personal jurisdiction over Brown in this civil suit to recover damages for the injuries sustained by plaintiff.[1] The Appellate Division held that, although personal jurisdiction could be obtained over Brown under this State's long-arm statute, doing so would violate Brown's federal due process rights. Plaintiffs appealed to this Court as of right (see CPLR 5601[b][1] ).
II.
"To determine whether a non-domiciliary may be sued in New York, we first determine whether our long-arm statute ( CPLR 302 ) confers jurisdiction over it in light of its contacts ***533 with this State" ( LaMarca v. Pak-Mor Mfg. Co. , 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 [2000] [emphasis added] ). If the requirements of CPLR 302 are not met, our inquiry ends (see Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, CPLR 302:11). However, if personal jurisdiction can be established under the statute, we must ensure that it would not violate the non-domiciliary's federal due process rights (see LaMarca , 95 N.Y.2d at 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 ; Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, CPLR 302:11).[2]
As relevant to this appeal, New York's long-arm statute provides that a court may exercise personal jurisdiction over any non-domiciliary, who in person or through an agent:
"3. commits a tortious act without the state causing injury to person or property within the state ... if [the non-domiciliary]
''(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
''(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue **244 *840 from interstate or international commerce ..." ( CPLR 302[a][3][i], [ii] ).
Neither party disputes that plaintiffs established certain conditions precedent to jurisdiction under CPLR 302(a)(3) of New York's long-arm statute-that plaintiffs' underlying causes of action arise from Brown's tortious acts without the State (Brown's allegedly negligent sale to Bostic in Ohio), which eventually caused injury within the state (the shooting of plaintiff Daniel Williams in Buffalo, New York). Our inquiry is therefore focused on whether Brown is entitled to summary judgment, dismissing the action, on the basis that New York cannot exercise long-arm jurisdiction over him under either subparagraph (i) or (ii) of (a)(3) (see CPLR 3212[b] ; Jacobsen v. New York City Health & Hosps. Corp. , 22 N.Y.3d 824, 833, 988 N.Y.S.2d 86, 11 N.E.3d 159 [2014] ).
***534 III.
CPLR 302(a)(3) was enacted in 1966 after this Court's decision in Feathers v. McLucas , which held that non-residents could not be subjected to jurisdiction under our long-arm statute for an "out-of-state tortious act" ( 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 209 N.E.2d 68 [1965] ; Mem in Support, L 1966, ch 590 at 17-18).[3] In Feathers, we noted that "[a]ny plea for further expansion of [the long-arm statute's] scope ... is a matter for the Legislature rather than the courts" ( id. at 464, 261 N.Y.S.2d 8, 209 N.E.2d 68 ). To aid the legislature in amending the long-arm statute, a study was conducted by the Judicial Conference on the necessary revisions to CPLR 302 (11th Ann Report of N.Y. Jud Conf, at 132-139; 12th Ann Report of N.Y. Jud Conf, at 339-344). The new provision was designed to be "well within constitutional bounds" (12th Ann Report of N.Y. Jud Conf, at 341 [emphasis added] ), and subparagraphs (i) and (ii) of CPLR 302(a)(3) "were deliberately inserted" to achieve that goal ( Ingraham v. Carroll , 90 N.Y.2d 592, 596-597, 665 N.Y.S.2d 10, 687 N.E.2d 1293 [1997] ). Hence, "[t]he purpose of sub[paragraphs] (i) and (ii) is to ensure the fairness of asserting jurisdiction over nondomiciliaries whose out of state acts cause local injuries" (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, 302:3).
Our rules of construction reinforce the underlying intent of CPLR 302(a)(3). As a general matter, "courts must avoid, if possible, interpreting a presumptively valid statute in a way that will needlessly render it unconstitutional" ( Overstock.com, Inc. v. New York State Dep't of Taxation & Fin., 20 N.Y.3d 586, 593, 965 N.Y.S.2d 61, 987 N.E.2d 621 [2013] ). In line with this general rule, when our long-arm statute is interpreted, whether federal due process may be offended should be considered to "avoid grave doubts concerning [the statute's] constitutionality" ( ***535 Fantis Foods v. Standard Importing Co., 49 N.Y.2d 317, 327, 425 N.Y.S.2d 783, 402 N.E.2d 122 [1980] ; see also Vincent C Alexander, Practice Commentaries, McKinney's Cons Laws of NY, CPLR 302:11). This interpretive **245 *841 framework, coupled with the intentional legislative design, ensures that it will be the "rare" case where the long-arm statute is out of step with federal due process ( D & R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro, 29 N.Y.3d 292, 300, 78 N.E.3d 1172 [2017] [internal quotation marks omitted] ).
IV.
In this case, both the dissenters and the Appellate Division agree that the requirements of CPLR (a)(3)(i) were met because Brown derived substantial revenue from goods used or consumed in this state (see dissenting op. at 546, 106 N.Y.S.3d at 253, 130 N.E.3d at 849; 159 A.D.3d 148, 154, 72 N.Y.S.3d 276 [4th Dept. 2018] ). To support this holding, the dissent, as did the Appellate Division, limits its analysis to a calculation of the revenue generated by Brown from his Ohio sales to Bostic and his associates. The dissent concludes that regardless of whether one examines the proportion of Brown's sales (roughly one-third of his sales for the relevant period) or the total dollar value of his sales, "the result is the same"-subparagraph (i) is satisfied (dissenting op. at 546, 106 N.Y.S.3d at 253, 130 N.E.3d at 849). The dissent's calculation of Brown's Ohio sales to other Ohio residents ipso facto includes no sales by him to New York residents or the New York market. This application of the statute is inconsistent with the legislative intent, the structure of the statute, and its prior application.
As this Court has made clear, " CPLR 302(a)(3)(i) necessitates some ongoing activity within New York State " ( Ingraham, 90 N.Y.2d at 597, 665 N.Y.S.2d 10, 687 N.E.2d 1293 [some emphasis supplied] ). This approach is grounded in the plain text of the statute. The first three clauses in CPLR 302(a)(3)(i) allow for jurisdiction when the defendant "regularly [1] does or [2] solicits business or [3] engages in any other persistent course of conduct" in the State. These clauses address whether defendants have, of their own volition, engaged in regular or persistent activity in New York such that they have established sufficient contacts with this State (see 12th Ann Report of N.Y. Jud Conf at 343; Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, CPLR 302:12). Thus, for example, courts have found that a "long-term apartment rental" by a business in New York can "constitute a persistent course of conduct by the firm" ( ***536 Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 126 [2d Cir.2002] ). Personal engagement in business transactions in New York also regularly meets the requirements of the first three clauses of CPLR 302(a)(3)(i) (see e.g. Granada Television, International, LTD. v. Lorindy Pictures International, Inc., 606 F. Supp. 68, 72 [S.D.N.Y. 1984] [finding participation in "at least two New York real estate partnerships," ownership of land, and maintenance of bank account in New York met the statutory requirements of CPLR 302(a)(3)(i) ] ).
The last clause of CPLR 302(a)(3)(i) -the substantial revenue clause-is no different in its requirement of contacts between a non-domiciliary and New York. But rather than assessing a non-domiciliary's regular activity in New York, it focuses on the value of a non-domiciliary's commercial contacts with the State (see Allen v. Canadian Gen. Elec Co, 65 A.D.2d 39, 41, 410 N.Y.S.2d 707 [3d Dept. 1978], affd 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 [1980] [substantial revenue clause of CPLR 302(a)(3)(i) involves calculating "(t)he importance of New York revenues to the total revenues of a business not actually doing business in New York State"] ). Accordingly, it is the commercial importance to the non-domiciliary of their sales-measured by either "comparing **246 *842 the [non-domiciliary's] overall income with its New York portion" or examining the sheer numerical value of New York income-that is the touchstone (Siegel & Connors, N.Y. Prac § 88 [6th ed] ).
This difference in focus does not mean, however, that the volitional requirement that the non-resident engage in some "ongoing activity" within the State disappears under the substantial revenue clause (see Ingraham, 90 N.Y.2d at 597, 665 N.Y.S.2d 10, 687 N.E.2d 1293 ). Unlike the dissent's approach here, courts applying that clause have understood as much. Jurisdiction under the substantial revenue clause has been tied to purposeful activity by the defendant in New York, usually direct sales by the defendant to New York-based customers or usage of New York distributors (see Reynolds v. Aircraft Leasing, Inc., 194 Misc.2d 550, 552, 756 N.Y.S.2d 704 [Sup. Ct., Queens County 2002] ; Tonns v. Spiegel's, 90 A.D.2d 548, 549, 455 N.Y.S.2d 125 [2d Dept. 1982] ; Allen, 65 A.D.2d at 41, 410 N.Y.S.2d 707 ). Where those intentional relationships are absent, courts have been hesitant to exercise jurisdiction over a non-domiciliary under the substantial revenue clause-especially when the non-domiciliary's goods are used or consumed in New York due to the unilateral activity of third parties (see e.g. Stephan v. Babysport, LLC, 499 F. Supp. 2d 279, 289 [E.D.N.Y. 2007] [declining to "attribute[ ] to Defendants" sales made in New York by "an unrelated entity in the final chain of distribution"] ).
***537 The dissent's jurisdictional analysis under the substantial revenue clause omits the requirement of "sufficient contacts with this state" that is essential to the exercise of personal jurisdiction under any of the clauses of CPLR 302(a)(3)(i) (see Ingraham, 90 N.Y.2d at 597, 665 N.Y.S.2d 10, 687 N.E.2d 1293 [internal quotation marks omitted] ). Each clause constitutes a " 'plus factor' " that "serve[s] to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum" ( Crane v. Carr, 814 F.2d 758, 763 [D.C. Cir.1987] [Ginsburg, J.] [analyzing D.C. long-arm statute that contains identical language to CPLR 302(a)(3)(i) ] ). Indeed, "each of the four alternative contacts in subset (i) constitutes a regular course of conduct in the state" (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, C302:12; see 12th Ann Report of N.Y. Jud Conf, at 343). Reading "sufficient contacts" out of the substantial revenue clause and finding that a non-resident's sales in another state constitute deriving revenue from New York State solely because their goods were later-sometimes years later-used or consumed in this State is entirely inconsistent with the legislative design of the statute.
In short, text, precedent, and legislative intent all compel the conclusion that the substantial revenue clause of CPLR 302(a)(3)(i) requires evidence that the non-domiciliary not just derive revenue from New York State, but intend to derive revenue from this State.[4] There is no evidence that Brown intended to derive such revenue here. Brown never contracted to provide services within New York, nor advertised or solicited business in New York, nor sent representatives or agents into New York, nor enticed New York residents or firearm distributors to come to Ohio to purchase firearms from him (see e.g. Ingraham, 90 N.Y.2d at 598, 665 N.Y.S.2d 10, 687 N.E.2d 1293 [declining to exercise jurisdiction pursuant to **247 *843 CPLR 302(a)(3)(i) because "it is undisputed that respondent practices only in Vermont .... [h]e neither treated decedent in New York, nor contracted to provide services in New York or solicited business in New York"] ).[5] To be sure, Bostic's illicit gun trafficking from Ohio and subsequent sales in ***538 New York constitute a regular course of conduct within New York, such that Bostic could be said to have derived substantial revenue from this State. However, his nebulous remarks to Brown, that he was "planning on possibly opening" or "wouldn't mind having" a store in New York at some unspecified point in the future, are not enough to attribute this regular course of conduct to Brown (see e.g. Birmingham Fire Ins. Co. of Pennsylvania v. KOA Fire & Marine Ins. Co., 572 F. Supp. 962, 968 [S.D.N.Y. 1983] ). To exercise long-arm jurisdiction over Brown based only on his Ohio sales to Bostic and his associates, all Ohio residents, would contravene the emphasis placed on fairness to the non-domiciliary when subparagraph (i) was crafted (see 12th Ann Report of N.Y. Jud Conf, at 341 [subparagraph (i) is meant to cover "those non-domiciliaries who have sufficient contacts with this state so that it is not unfair to require them to answer in this state for injuries they cause here by acts done"] [emphasis added] ). Put simply, Brown does not have sufficient contacts with this State to make it reasonable to subject him to jurisdiction under the substantial revenue clause of CPLR 302(a)(3)(i) (see Siegel & Connors, N.Y. Prac § 88 [6th ed] ).
Jurisdiction is similarly lacking under CPLR 302(a)(3)(ii). To find jurisdiction under this subparagraph, a plaintiff must demonstrate that the nondomiciliary "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce" ( CPLR 302[a][3][ii] [emphasis supplied] ). The dissent posits that because Brown sold firearms to Bostic and was told by Bostic that he and his associates might open a store in Buffalo, "Brown served the New York market" (dissenting op. at 550-551, 106 N.Y.S.3d at 256, 130 N.E.3d at 852). In doing so, the dissent disregards the same principles it did when analyzing subparagraph (i) of CPLR 302(a)(3).
The first clause of subparagraph (ii)-the foreseeability clause-" is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere" ( Ingraham, 90 N.Y.2d at 598, 665 N.Y.S.2d 10, 687 N.E.2d 1293 ). The second clause-the interstate commerce clause-" is designed to narrow 'the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a ***539 local character ' " ( LaMarca, 95 N.Y.2d at 215, 713 N.Y.S.2d 304, 735 N.E.2d 883 [some internal quotation marks omitted] [emphasis added], quoting Ingraham, 90 N.Y.2d at 599, 665 N.Y.S.2d 10, 687 N.E.2d 1293 ; see 12th Ann Report of Jud Conf, at 342-343).
The key to meeting the first condition is assessing whether the non-domiciliary "knew that [a product] was likely to end up **248 *844 in New York" (Siegel & Connors, N.Y. Prac § 88 ). It follows that there must be some "discernible effort [by the non-domiciliary] to directly or indirectly serve the New York market" ( Schaadt v. TW Kutter, Inc., 169 A.D.2d 969, 969, 564 N.Y.S.2d 865 [3d Dept. 1991] ). Here, there is no way to discern any such effort. This is not a case where Brown should have "foreseen the forum consequences ... because he entered into agreements with agents to solicit business in New York" ( Allen v. Auto Specialties Mfg. Co., 45 A.D.2d 331, 333, 357 N.Y.S.2d 547 [3d Dept. 1974] ) or engaged with a "New York distributor" ( LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 215, 713 N.Y.S.2d 304, 735 N.E.2d 883 [2000] ). In Bostic's conversations with Brown, the former simply relayed his speculative aspirations: that he "plann[ed] on possibly" opening up a store in Buffalo, New York. These false claims to Brown fail to show that Brown "knew that [his products were] likely to end up in New York" (Siegel & Connors N.Y. Prac § 88 [6th Ed]; see e.g. Martinez v. American Standard, 91 A.D.2d 652, 653, 457 N.Y.S.2d 97 [2d Dept. 1982], affd 60 N.Y.2d 873, 470 N.Y.S.2d 367, 458 N.E.2d 826 [1983] [rejecting jurisdiction under CPLR 302(a)(3)(ii) where the defendant "d(id) not advertise or solicit business in New York ... and d(id) not ship any of its products into New York"] ).
The second interstate revenue condition of subparagraph (ii) permits the exercise of jurisdiction over non-domiciliaries that "can reasonably foresee that [their] business may subject [them] to the jurisdiction of the various states from which [they] derive[ ] revenue " (Mem by the Committee on Civil Practice Law and Rules, Bill Jacket, L 1966, ch 590 at 9 [emphasis added] ). This "limitation ... is intended to exclude non-domiciliaries whose business operations are of a local character" (12th Ann Report of N.Y. Jud Conf, at 341).
Here, Brown's business was decidedly local. GLP is an Ohio retail firearms store, through which Brown, pursuant to his FFL, has only sold handguns to in-state residents (compare LaMarca, 95 N.Y.2d at 215, 713 N.Y.S.2d 304, 735 N.E.2d 883 [stating that "Pak-Mor's business ***540 can hardly be characterized as 'local' .... (a) Texas corporation with a manufacturing facility in Virginia is inherently engaged in interstate commerce .... (m)oreover, the company had a New York distributor and a district representative"] ).[6] In the year 2000, when the firearm sales at issue were made to Bostic, Brown sold only 9 out of 525 firearms to out-of-state residents, accounting for less than 2% of his total sales. Such small percentages of total revenue, which Brown stated was in the thousands of dollars per year, have only been categorized as substantial when the dollar amount has been considerably greater (see Allen v. Canadian General Elec. Co. Ltd., 65 A.D.2d 39, 42, 410 N.Y.S.2d 707 [3d Dept. 1978] [holding that while "ordinarily it would not be expected that a small percentage of 1% or 2% would equal large amounts of money", jurisdiction under the long-arm statute was warranted where 1% of sales generated nine million dollars], affd 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 [1980] ; compare **249 *845 Ingraham, 90 N.Y.2d at 604, 665 N.Y.S.2d 10, 687 N.E.2d 1293, citing New England Laminates Co. v. Murphy, 79 Misc.2d 1025, 1028, 362 N.Y.S.2d 730 [Sup. Ct., Nassau County 1974] [4% of $ 400,000 not "substantial" as a matter of law] ).
In sum, in the year he sold firearms to Bostic, Brown did not engage in interstate activity from which he derived substantial revenue, let alone interstate activity from which he derived revenue from New York State.[7] To find then that plaintiff satisfied the requirements of CPLR (a)(3)(ii) on "so attenuated a consequence of defendant's act" would "burden unfairly non-residents whose connection to the state is remote" ( Fantis, 49 N.Y.2d at 327, 425 N.Y.S.2d 783, 402 N.E.2d 122 ; see 11th Ann Report of N.Y. Jud Conf at 136 [stating that "(i)f the (non-domiciliary) had no other contact with New York, it might be thought both unfair and undesirable to subject him to the jurisdiction of New York"] ).
Plaintiffs have failed to raise a question of fact as to whether personal jurisdiction over Brown can be exercised under this State's long-arm statute.
***541 Even assuming personal jurisdiction under the statute, I agree with the majority opinion that such jurisdiction would violate Brown's federal due process rights.

DiAnna Peterson, who is not a defendant, is another Bostic associate who purchased guns from Brown for Bostic.

To the extent the majority suggests that we need not address CPLR 302(a) first because Brown appealed as of right pursuant to CPLR 5601(b)(1) (see majority op. at 528, 531 n. 2, 106 N.Y.S.3d at 239-40, 242 n. 2, 130 N.E.3d at 835-36, 838 n. 2), we respectfully disagree. This Court is not limited to reviewing Brown's constitutional arguments merely because he appealed under CPLR 5601(b)(1), and this provision contains nothing to support the majority's departure from centuries of legal principle (see Arthur Karger, Powers of the N.Y. Court of Appeals [2d ed] § 7:2 [discussing CPLR 5601(b)(1) and explaining "so long as such a constitutional question is directly involved, an appeal as of right will lie even though other questions may also be involved, and all questions in the case which the Court of Appeals is empowered to review will be open for consideration, whether or not they are of a constitutional nature"] ).

In Feathers, this Court highlighted the "reformulated" standard of personal jurisdiction ushered in by the Supreme Court's decisions International Shoe Co. v. State of Wash. and Hanson v. Denckla :
" 'The unilateral activity of those who claim some relationship with a nonresident defendant', the court concluded, 'cannot satisfy the requirement of contact with the forum State.... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws' " (Feathers , 15 N.Y.2d at 451-452, 261 N.Y.S.2d 8, 209 N.E.2d 68 [emphasis added], quoting International Shoe, 326 U.S. 310, 316, 66 S.Ct. 154 [1945] ; Denckla , 357 U.S. 235, 253, 78 S.Ct. 1228 [1958] ).

The dissent does not dispute that intent or knowledge is necessary to show an "association between the defendant and this forum" (dissenting op. at 547, 106 N.Y.S.3d at 254, 130 N.E.3d at 850).

In fact, it was only in 2004 that Brown made a single two-gun sale to a New York State resident, a transaction that by itself, is insufficient to establish that Brown engaged in a regular course of conduct within New York State (see 12th Ann Report of N.Y. Jud Conf, at 341 ["a (singular) business transaction is insufficient and a regular course of conduct in the state is required"]; see also Ingraham, 90 N.Y.2d at 597, 665 N.Y.S.2d 10, 687 N.E.2d 1293 ).

In accordance with his federal firearms license, Brown operated a retail firearm store out of his home and sold firearms, within certain parameters, at qualifying gun shows around Ohio: Brown was allowed to sell handguns and long guns (rifles and shotguns) to other Ohio residents, long guns to out-of-state residents, handguns and long guns to licensed out-of-state gun dealers, and handguns and long guns to law enforcement agencies (see 18 USC § 922 [b][3]; 27 CFR §§ 478.50, 478.94, 478.96, 478.99, 478.100 ).

The dissent's attempt to include Brown's sales to Bostic in its calculation of interstate revenue for purposes of exercising jurisdiction under subparagraph (ii) fails for the same reasons it failed under the analysis in subparagraph (i)-Bostic's New York sales cannot be attributed to Brown (see supra at 537-38, 106 N.Y.S.3d at 246-47, 130 N.E.3d at 842-43).